In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 18-2527

IN RE: ROBBIN L. FULTON,

*Debtor-Appellee.*

APPEAL OF: CITY OF CHICAGO

———————————

Appeal from the United States Bankruptcy Court
for the Northern District of Illinois, Eastern Division-BK.
No. 18-02860 — **Jack B. Schmetterer**, *Bankruptcy Judge*.

———————————

No. 18-2793

IN RE: JASON S. HOWARD,

*Debtor-Appellee.*

APPEAL OF: CITY OF CHICAGO

———————————

Appeal from the United States Bankruptcy Court
for the Northern District of Illinois, Eastern Division-BK.
No. 17-25141 — **Jacqueline P. Cox**, *Bankruptcy Judge*.

———————————

No. 18-2835

IN RE: GEORGE PEAKE,

*Debtor-Appellee.*

APPEAL OF: CITY OF CHICAGO

—————————

Appeal from the United States Bankruptcy Court
for the Northern District of Illinois, Eastern Division-BK.
No. 18-16544 — **Deborah Lee Thorne**, *Bankruptcy Judge.*

—————————

No. 18-3023

IN RE: TIMOTHY SHANNON,

*Debtor-Appellee.*

APPEAL OF: CITY OF CHICAGO

—————————

Appeal from the United States Bankruptcy Court
for the Northern District of Illinois, Eastern Division-BK.
No. 18-04116 — **Carol A. Doyle**, *Chief Bankruptcy Judge.*

—————————

ARGUED MAY 14, 2019 — DECIDED JUNE 19, 2019

—————————

Before FLAUM, KANNE, and SCUDDER, *Circuit Judges.*

FLAUM, *Circuit Judge.* In this consolidated appeal of four Chapter 13 bankruptcies, we consider whether the City of Chicago may ignore the Bankruptcy Code's automatic stay and continue to hold a debtor's vehicle until the debtor pays her outstanding parking tickets. Prior to the debtors' filing for bankruptcy, the City impounded each of their vehicles for

failure to pay multiple traffic fines. After the debtors filed their Chapter 13 petitions, the City refused to return their vehicles, claiming it needed to maintain possession to continue perfection of its possessory liens on the vehicles and that it would only return the vehicles when the debtors paid in full their outstanding fines. The bankruptcy courts each held that the City violated the automatic stay by "exercising control" over property of the bankruptcy estate and that none of the exceptions to the stay applied. The courts ordered the City to return debtors' vehicles and imposed sanctions on the City for violating the stay.

This is not our first time addressing this issue: in *Thompson v. General Motors Acceptance Corp.*, 566 F.3d 699 (7th Cir. 2009), we held that a creditor must comply with the automatic stay and return a debtor's vehicle upon her filing of a bankruptcy petition. We decline the City's request to overrule *Thompson*. We therefore affirm the bankruptcy courts' judgments relying on *Thompson*, and we also agree with the bankruptcy courts that none of the exceptions to the stay apply.

## I. Background

The Chicago Municipal Code permits creditor-appellant the City of Chicago to immobilize and then impound a vehicle if its owner has three or more "final determinations of liability," or two final determinations that are over a year old, "for parking, standing, compliance, automated traffic law enforcement system, or automated speed enforcement system violation[s]." Municipal Code of Chicago ("M.C.C.") § 9-100-120(b); *see also id.* § 9-80-240(a) (providing for impoundment of vehicles "operated by a person with a suspended or revoked driver's license"). The fines for violations of the City's Traffic Code range from $25 (*e.g.*, parallel parking violation)

to $500 (*e.g.*, parking on a public street without displaying a wheel tax license emblem). *Id.* § 9-100-020(b)–(c). Failure to pay the fine within twenty-five days automatically doubles the penalty. *Id.* § 9-100-050(e). After a vehicle is impounded, the owner is further subjected to towing and storage fees, *see id.* § 9-64-250(c), and to the City's costs and attorney's fees for collection activity. *Id.* §§ 1-19-020, 2-14-132(c)(1)(A). To retrieve her vehicle, an owner may either pay the fines, towing and storage fees, and collection costs and fees in full, *id.* § 2-14-132(c)(1)(A), or pay the full amount via an installment plan over a period of up to thirty-six months, provided she makes an initial payment of half the fines and penalties plus all of the impoundment, towing, and storage charges. *Id.* § 9-100-101(a)(2)–(3).

In 2016, the City amended the Code to include: "Any vehicle impounded by the City or its designee shall be subject to a possessory lien in favor of the City in the amount required to obtain release of the vehicle." *Id.* § 9-92-080(f). Based on this provision, the City began refusing to release impounded vehicles to debtors who had filed Chapter 13 petitions. That is just what occurred in these four cases.

**A.** *In re Fulton*

Debtor-appellee Robbin Fulton uses a vehicle to commute to work, transport her young daughter to day care, and care for her elderly parents on weekends. On December 24, 2017, three weeks after she purchased a 2015 Kia Soul, the City towed and impounded the vehicle for a prior citation of driving on a suspended license. Fulton filed a Chapter 13 bankruptcy petition on January 31, 2018 and filed a plan on February 5, treating the City as a general unsecured creditor. The City filed a general unsecured proof of claim on February 23

for $9,391.20. After the court confirmed Fulton's plan on March 21, she requested the City turn over her vehicle. The City then amended its proof of claim to add impound fees, for a total of $11,831.20, and to assert its status as a secured creditor; it did not return Fulton's vehicle.

On May 2, Fulton filed a motion for sanctions arguing the City was required to turn over her vehicle pursuant to *Thompson* and that its failure to do so was sanctionable conduct. The City countered that Fulton must seek turnover through an adversary proceeding. It asserted it was retaining possession to perfect its possessory lien and was thus excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(3).

On May 25, the bankruptcy court held that the City was required to return Fulton's vehicle under *Thompson* and that the City was not excepted from the stay under § 362(b)(3). The court ordered the City to turn over Fulton's vehicle no later than May 29, imposed a sanction of $100 for every day the City failed to comply, and sustained Fulton's objection to the City's claim as a secured creditor. The City moved to stay the order in the district court pending appeal; the district court denied the stay request on September 10. Eventually, the City returned Fulton's vehicle. At no point did the City initiate proceedings to protect its rights under § 363(e).

**B.** *In re Shannon*

The City impounded debtor-appellee Timothy Shannon's 1997 Buick Park Avenue on January 8, 2018 for unpaid parking tickets. Shannon filed a Chapter 13 petition on February 15. On February 27, the City filed an unsecured proof of claim for $3,160 in fines dating back to 1999. Shannon, in turn, filed a proposed plan that did not include the City as a secured

creditor, to which the City did not object, and the court confirmed the plan on May 1. When Shannon sought the return of his vehicle, the City amended its proof of claim, adding fines, storage, and towing fees for a total of $5,600, and stated the claim was secured by its possession of Shannon's vehicle.

Shannon filed a motion for sanctions on June 12, asserting the stay required the City to turn over his vehicle. The court granted his motion on September 7; it held the City's claim was unsecured because it did not object to the plan that characterized the debt as such. It also determined the City violated the stay by failing to return Shannon's vehicle, that the §§ 362(b)(3) and (b)(4) exceptions to the stay did not apply, and that the City further violated § 362(a)(4) and (a)(6) by retaining the vehicle. The court noted the City was free to file a motion seeking adequate protection of its lien. The City returned Shannon's car and did not file any such motion.

### C. *In re Peake*

Debtor-appellee George Peake relies on his car to travel approximately forty-five miles from his home to work. The City impounded his 2007 Lincoln MKZ for unpaid fines on June 1, 2018. Peake filed a Chapter 13 petition on June 9. In response, the City filed a secured proof of claim for $5,393.27 and asserted a possessory lien on his vehicle. After the City refused Peake's request to return his vehicle, he filed a motion for sanctions and for turnover. On August 15, the bankruptcy court granted the motion; it held that neither § 362(b)(3) nor (b)(4) applied, so the City's retention of Peake's vehicle violated the stay, and it ordered the City to release his vehicle immediately. The City filed a motion to stay the order pending appeal, which the court denied on August 22. The same day, Peake filed a motion for civil contempt based on the

City's refusal to release his vehicle. The court granted the motion and entered an order requiring the City to pay monetary sanctions—$100 per day from August 17 through August 22 and $500 per day thereafter until the City returned his vehicle. The City filed an emergency motion for a stay pending appeal in our Court, which we denied. Finally, the City released Peake's vehicle. At no point did the City file a motion to protect its interest in the vehicle.

### D. *In re Howard*

The City immobilized debtor-appellee Jason Howard's vehicle on August 9, 2017 and impounded it soon after. Howard filed a Chapter 13 petition on August 22. The City filed a secured proof of claim on August 23 for $17,110.80. The court confirmed Howard's plan on October 16, which included a nonpriority unsecured debt of $13,000 owed to the City for parking tickets. Though the Code did not impose an automatic stay when Howard filed his petition due to his prior dismissed bankruptcy petitions, *see* 11 U.S.C. § 362(c)(4)(A), the court granted Howard's motion to impose a stay when it confirmed his plan on October 16. The City did not object to its treatment as unsecured under the plan and did not appeal the confirmation order; rather, it simply refused to release Howard's vehicle unless he paid 100% of its claim.

On January 22, 2018, the court issued a rule to show cause to the City why it should not be sanctioned for refusing to release Howard's vehicle in accordance with *Thompson*. The court rejected the City's argument that it was excepted from the stay under § 362(b)(3) and, on April 16, 2018, ordered sanctions of $50 per day beginning August 22, 2017 for the City's violation of the stay.

After the City filed its opening appellate brief, Howard filed notice of his intention not to participate in the appeal. His counsel explained Howard's bankruptcy case had been dismissed and the City disposed of his vehicle. He has since filed a new bankruptcy case to address his parking tickets but has abandoned interest in the vehicle that was the subject of the relevant Chapter 13 petition in the bankruptcy court below. However, "issues related to an alleged violation of the automatic stay" are not mooted by dismissal of a bankruptcy petition, *Denby-Peterson v. Nu2u Auto World*, 595 B.R. 184, 188 (D.N.J. 2018); a court "must have the power to compensate victims of violations of the automatic stay and punish the violators, even after the conclusion of the underlying bankruptcy case." *In re Johnson*, 575 F.3d 1079, 1083 (10th Cir. 2009) (citing *In re Davis*, 177 B.R. 907, 911–12 (B.A.P. 9th Cir. 1995)).

*          *          *

In each of these four cases, the City appealed the bankruptcy courts' orders finding the City violated the stay. These cases have been consolidated for appeal.

## II. Discussion

The main question before us is whether the City is obligated to return a debtor's vehicle upon her filing of a Chapter 13 bankruptcy petition, or whether the City is entitled to hold the debtor's vehicle until she pays the fines and costs or until she obtains a court order requiring the City to turn over the vehicle. We review a bankruptcy court's factual findings for clear error and conclusions of law de novo. *In re Jepson*, 816 F.3d 942, 945 (7th Cir. 2016).

### A. The Automatic Stay

Section 362(a)(3) of the Bankruptcy Code provides that a Chapter 13 bankruptcy petition "operates as a stay, applicable to all entities, of … any act to obtain possession of property of the estate or of property from the estate or to *exercise control* over property of the estate." 11 U.S.C. § 362(a)(3) (emphasis added). We applied this provision to a very similar factual situation in *Thompson v. General Motors Acceptance Corp*. There, a creditor seized a debtor's car after he defaulted on payments. 566 F.3d at 700. The debtor filed a Chapter 13 petition and attempted to retrieve his car, but the creditor refused. *Id.* We considered two issues relating to § 362(a)(3): whether the creditor "exercised control" of property of the bankruptcy estate by failing to return the vehicle after the debtor filed for bankruptcy, and whether the creditor was required to return the vehicle prior to a court determination establishing the debtor could provide adequate protection for the creditor's interest in the vehicle. *Id.* at 701.

#### 1. *"Exercise Control"*

First, we observed in *Thompson* there was no debate the debtor has an equitable interest in his vehicle, and "as such, it is property of his bankruptcy estate." 566 F.3d at 701 (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983)); *see* 5 Collier on Bankruptcy ¶ 541.01 (16th ed. 2019) ("Congress's intent to define property of the estate in the broadest possible sense is evident from the language of the statute which, in section 541(a)(1), initially defines the scope of estate property to be all legal or equitable interests of the debtor in property as of the commencement of the case, wherever located and by whomever held."). We then rejected the creditor's argument

that passively holding the asset did not satisfy the Code's definition of exercising control: "Holding onto an asset, refusing to return it, and otherwise prohibiting a debtor's beneficial use of an asset all fit within th[e] definition, as well as within the commonsense meaning of the word." *Thompson*, 566 F.3d at 702. As we explained, limiting the reach of "exercising control" to "selling or otherwise destroying the asset," as the creditor proposed, did not fit with bankruptcy's purpose: "The primary goal of reorganization bankruptcy is to group *all* of the debtor's property together in his estate such that he may rehabilitate his credit and pay off his debts; this necessarily extends to all property, even property lawfully seized pre-petition." *Id.* (citing *Whiting Pools*, 462 U.S. at 203–04).

Additionally, Congress amended § 362(a)(3) in 1984 to prohibit conduct that "exercise[d] control" over estate assets. We determined this addition suggested congressional intent to make the stay more inclusive by including conduct of "creditors who seized an asset pre-petition." *Id.*; *see In re Javens*, 107 F.3d 359, 368 (6th Cir. 1997) ("The fact that 'to obtain possession' was amended to 'to obtain possession … or to exercise control' hints [] that this kind of 'control' might be a broadening of the concept of possession … It could also have been intended to make clear that [§ 362](a)(3) applied to property of the estate that was not in the possession of the debtor." (first alteration in original)); *In re Del Mission Ltd.*, 98 F.3d 1147, 1151 (9th Cir. 1996) (The 1984 amendment "broaden[ed] the scope of § 362(a)(3) to proscribe the mere knowing retention of estate property."). We therefore held that in retaining possession of the car, the creditor violated the automatic stay in § 362(a)(3). *Thompson*, 566 F.3d at 703.

### 2. *Compulsory Turnover*

Next, we concluded § 362(a)(3) becomes effective immediately upon filing the petition and is not dependent on the debtor first bringing a turnover action. *Id.* at 707–08. In so concluding, we relied on a plain reading of §§ 363(e) and 542(a) and the Supreme Court's decision in *Whiting Pools*.

Section 363(e) provides:

> [O]n request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased … by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e). The creditor acknowledged, and we agreed, that it has the burden of requesting protection of its interest in the asset under § 363(e). "However, if a creditor is allowed to retain possession, then this burden is rendered meaningless—a creditor has no incentive to seek protection of an asset of which it already has possession." *Thompson*, 566 F.3d at 704. For § 363(e) to have meaning then, the asset must be returned to the estate prior to the creditor seeking protection of its interest. *Id.*; *cf. In re Sharon*, 234 B.R. 676, 684 (B.A.P. 6th Cir. 1999) ("[T]he Bankruptcy Code does not elevate [the creditor's] adequate protection right above the Chapter 13 debtor's right to possession and use of a car.").

Moreover, § 542(a) "indicates that turnover of a seized asset is compulsory." *Thompson*, 566 F.3d at 704. Section 542(a) requires that a creditor in possession of property of the estate "*shall deliver* to the trustee, and account for, such property or

the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a) (emphasis added). We observed that a majority of courts had found § 542(a) worked in conjunction with § 362(a) "to draw back into the estate a right of possession that is claimed by a lien creditor pursuant to a pre-petition seizure; the Code then substitutes 'adequate protection' for possession as one of the lien creditor's rights in the bankruptcy case." *Thompson*, 566 F.3d at 704 (quoting *Sharon*, 234 B.R. at 683). Because "[t]he right of possession is incident to the automatic stay," *id.*, the creditor must first return the asset to the bankruptcy estate. Only then is "the bankruptcy court [] empowered to condition the right of the estate to keep possession of the asset on the provision of certain specified adequate protections to the creditor." *Id.*; *see also* 11 U.S.C. § 362(d)(1) ("On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under [§ 362](a) … for cause, including the lack of adequate protection of an interest in property …."). The Supreme Court indicated as much in *Whiting Pools* when it explained that a "creditor with a secured interest in property included in the estate must look to [§ 363(e)] for protection, *rather than to the nonbankruptcy remedy of possession*." 462 U.S. at 204 (emphasis added).

    *3.* Thompson *Controls*

Applying *Thompson* to the facts before us, we conclude, as each bankruptcy court did, that the City violated the automatic stay pursuant to § 362(a)(3) by retaining possession of the debtors' vehicles after they declared bankruptcy. *See In re Shannon*, 18-bk-04116, Mem. Op. at 11 (Bankr. N.D. Ill. Sept. 7, 2018), ECF No. 64 ("*Thompson* [] requires any secured creditor in possession of a debtor's vehicle to return it immediately

and seek adequate protection …."); *In re Peake*, 18-bk-16544, Mem. Op. at 3 (Bankr. N.D. Ill. Aug. 15, 2018), ECF No. 40 ("[T]he City's conduct in retaining possession of the vehicle violates [§] 362(a)(3) as that section has been interpreted … in *Thompson* …."); *In re Fulton*, 18-bk-02860, Mem. Op. at 2 (Bankr. N.D. Ill. May 25, 2018), ECF No. 39 ("[T]he City is circumventing entirely the procedural burden imposed on it by *Thompson* and the protections provided to debtors by the automatic stay."); *In re Howard*, 17-bk-25141, Mem. Op. at 10 (Bankr. N.D. Ill. Apr. 16, 2018), ECF. No. 63 ("[Section 362(a)] does not authorize continued possession of impounded vehicles in contravention of the *Thompson* ruling."). The City was required to return debtors' vehicles and seek protection within the framework of the Bankruptcy Code rather than through "the nonbankruptcy remedy of possession." *Whiting Pools*, 462 U.S. at 204.

The City acknowledges *Thompson* controls but asks us to overrule *Thompson* for three reasons: (1) property impounded prior to bankruptcy is not property of the bankruptcy estate because the debtors did not have a possessory interest in their vehicles at the time of filing; (2) the stay requires creditors to maintain the status quo and not take any action, such as returning property to the debtor, so the onus is on the debtor to move for a turnover action to retrieve her vehicle; and (3) the plain language of § 362(a)(3) requires an "act" to exercise control, and passive retention of the vehicle is not an "act."

We decline the City's request; *Thompson* considered and rejected these arguments. More fundamentally, the City's arguments ignore the purpose of bankruptcy—"to allow the debtor to regain his financial foothold and repay his credi-

tors." *Thompson*, 566 F.3d at 706; *see also* 5 Collier on Bank-
ruptcy ¶ 541.01 ("[The] central aggregation and protection of
property [] promote[s] the fundamental purposes of the Bank-
ruptcy Code: the breathing room given to a debtor that at-
tempts to make a fresh start, and the equality of distribution
of assets among similarly situated creditors according to the
priorities set forth within the Code."). To effectively do so, a
debtor must be able to use his assets "while the court works
with both debtor and creditors to establish a rehabilitation
and repayment plan." *Thompson*, 566 F.3d at 707; *see also Whit-
ing Pools*, 462 U.S. at 203 ("[T]o facilitate the rehabilitation of
the debtor's business, all the debtor's property must be in-
cluded in the reorganization estate."). This is why § 542 com-
pels the return of property to the estate, including "property
in which the debtor did not have a possessory interest at the
time the bankruptcy proceedings commenced." *Whiting Pools*,
462 U.S. at 205; *see In re Weber*, 719 F.3d 72, 79 (2d Cir. 2013)
("*Whiting Pools* teaches that the filing of a petition will gener-
ally transform a debtor's equitable interest into a bankruptcy
estate's possessory right in the vehicle."). Thus, contrary to
the City's argument, the status quo in bankruptcy is the return
of the debtor's property to the estate. In refusing to return the
vehicles to their respective estates, the City was not passively
abiding by the bankruptcy rules but actively resisting § 542(a)
to exercise control over debtors' vehicles.

What's more, the position we took in *Thompson* brought
our Circuit in line with the majority rule, held by the Second,
Eighth, and Ninth Circuits. *See Weber*, 719 F.3d 72; *Del Mission*
98 F.3d 1147; *In re Knaus*, 889 F.2d 773 (8th Cir. 1989). Alt-
hough the Tenth Circuit recently adopted the City's view, *see
In re Cowen*, 849 F.3d 943 (10th Cir. 2017), that position is still

the minority rule. Our reasoning in *Thompson* continues to re-flect the majority position and we believe it is the appropriate reading of the bankruptcy statutes. At bottom, the City wants to maintain possession of the vehicles not because it wants the vehicles but to put pressure on the debtors to pay their tickets. That is precisely what the stay is intended to prevent.[1]

The City, though, pleads necessity; it claims that, without retaining possession, it is helpless to prevent the loss or de-struction of the vehicles. It did not attempt in any of these cases, however, to seek adequate protection of its interests through the methods available under the Bankruptcy Code, and at oral argument, the City asserted it did not have "the opportunity" to request such protection before the bank-ruptcy courts ordered it to return the vehicles. The record be-lies this statement. In each case, the parties engaged in motion practice, often over the course of months, before the courts held the City to be in violation of the stay. At any point the City could have sought adequate protection of its interests, but it chose not to avail itself of the Code's available proce-dures. *See, e.g.*, 11 U.S.C. § 362(d)(1) (court may relieve credi-tor from the stay if debtor cannot adequately protect credi-tor's interest in the property); *id.* § 362(f) (court may relieve creditor from stay "as is necessary to prevent irreparable damage to the interest of an entity in property"); *id.* § 363(e) (creditor may request court to place limits or conditions on

---

[1] The *In re Shannon* court further found that § 362(a)(4) and (a)(6) also prohibit the City's continued retention of debtors' vehicles. Because the City is bound by the stay under § 362(a)(3), we do not reach the applica-bility of the additional stay provisions.

trustee's power to use, sell, or lease property to protect creditor's interest).

We recognize that once the City complies with the automatic stay and immediately turns over vehicles, it will need to seek protection on an expedited basis. Though we leave it to the City and the bankruptcy courts to fashion the precise procedure for doing so, we note the following: The City will have notice of the bankruptcy petition when the debtor requests her vehicle, if not sooner. At that time, the City may immediately file an emergency motion for adequate protection of its interest in a debtor's vehicle, which may be heard within a day or so, and the City can even file such motions ex parte if necessary. *See id.* § 363(e); Fed. R. Bankr. P. 4001(a)(2); *see also* 11 U.S.C. § 362(d)(1), (f); Bankr. N.D. Ill. R. 9013-9(B)(9)(d) (motion for relief from stay under § 362 where movant alleges security interest in vehicle "ordinarily [] granted without hearing"). It will be the rare occasion where a single day's delay will have lost the City the value of its security. Regardless, the Code is clear that it is the creditor's obligation to come to court and ask for protection, not, as the City advocates, the debtor's obligation to file an adversary proceeding against every creditor holding her property at the time she files for bankruptcy. *Cf. In re Lisse*, 921 F.3d 629, 639 (7th Cir. 2019) ("The basic premise [of Chapter 13] is to facilitate the debtor's ability to pay his creditors …."data).

The City's argument that it will be overburdened with responding to Chapter 13 petitions is ultimately unavailing; any burden is a consequence of the Bankruptcy Code's focus on protecting debtors and on preserving property of the estate for the benefit of *all* creditors. It perhaps also reflects the importance of vehicles to residents' everyday lives, particularly

where residents need their vehicles to commute to work and earn an income in order to eventually pay off their fines and other debts.[2] It is not a reason to permit the City to ignore the automatic stay and hold captive property of the estate, in contravention of the Bankruptcy Code.

Furthermore, if a debtor files a bankruptcy petition in bad faith and immediately dismisses her case, as the City claims many debtors do solely to retrieve their impounded vehicles, the City has recourse: it may file a bad faith motion against the debtor. If the court finds bad faith, it may immediately

---

[2] We additionally note that the "flood" of Chapter 13 filings is evidence of the disproportionate effect of the City's traffic fines and fees on its low-income residents, an issue that is not unique to Chicago. *See, e.g.*, Maura Ewing, *Should States Charge Low-Income Residents Less for Traffic Tickets?*, The Atlantic (May 13, 2017), https://www.theatlantic.com/politics/archive/2017/05/traffic-debt-california-brown/526491/ (California); Sam Sanders, *Study Finds The Poor Subject To Unfair Fines, Driver's License Suspensions*, NPR: The Two-Way (Apr. 9, 2015), https://www.npr.org/sections/thetwo-way/2015/04/09/398576196/study-find-the-poor-subject-to-unfair-fines-drivers-license-suspensions (Missouri and California); Melissa Sanchez & Sandhya Kambhampati, *How Chicago Ticket Debt Sends Black Motorists Into Bankruptcy*, ProPublica Illinois (Feb. 27, 2018), https://features.propublica.org/driven-into-debt/chicago-ticket-debt-bankruptcy/ ("[African-American] neighborhoods account for 40 percent of all debt, though they account for only 22 percent of all the tickets issued in the city over the past decade—suggesting how the debt burdens the poor."); *see also* Torie Atkinson, Note, *A Fine Scheme: How Municipal Fines Become Crushing Debt in the Shadow of the New Debtors' Prisons*, 51 Harv. C.R.-C.L. L. Rev. 189, 217–22 (2016) ("The consequences of fines and fees can be dramatic and unforgiving: unemployment, loss of transportation, homelessness, loss of government or community services, and poor credit. And without the ability to accumulate wealth or capture even the smallest windfall for themselves, the poor become poorer, unable to climb out of an economic chasm.").

dismiss the case and may even sanction the debtor. 11 U.S.C. § 1307(c); *see, e.g.*, *Lisse*, 921 F.3d at 639–41 (affirming sanctions and dismissal of Chapter 13 petition filed in bad faith to collaterally attack state court judgment); *In re Bell*, 125 F. App'x 54, 57 (7th Cir. 2005) (affirming dismissal of Chapter 13 petition with prejudice where debtors filed multiple petitions "solely to impede the foreclosure sale" of their home).

### B.  Exceptions to the Stay

The City next argues that even if the stay applies, it is excepted under § 362(b)(3) and (b)(4). "We construe the Bankruptcy Code 'liberally in favor of the debtor and strictly against the creditor.'" *Village of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002) (quoting *In re Brown*, 108 F.3d 1290, 1292 (10th Cir. 1997)). The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986) (quoting S. Rep. No. 95–989, at 54 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840). We therefore narrowly construe exceptions "to give the automatic stay its intended broad application." *In re Grede Foundries, Inc.*, 651 F.3d 786, 790 (7th Cir. 2011); *see In re Stringer*, 847 F.2d 549, 552 (9th Cir. 1988) ("Congress clearly intended the automatic stay to be quite broad. Exemptions to the stay, on the other hand, should be read narrowly to secure the broad grant of relief to the debtor." (footnotes omitted)).

### 1. *Section 362(b)(3)*

Section 362(b)(3) provides that a Chapter 13 bankruptcy petition does not operate as a § 362(a) automatic stay:

> of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of [the Bankruptcy Code] or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of [the Bankruptcy Code].

11 U.S.C. § 362(b)(3). Section 546(b) limits a trustee's power to avoid a nonperfected lien by making that power subject to any nonbankruptcy law that "permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection," or "provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation." 11 U.S.C. § 546(b)(1). The classic example of this exception is for a creditor who has a grace period for perfecting its interest, such as under the Uniform Commercial Code. *See* 3 Collier on Bankruptcy ¶ 362.05 (explaining § 362(b)(3) permits a purchase-money secured creditor to retroactively perfect under the twenty-day grace period provided in Article 9 of the U.C.C. and permits the filing of continuations of financing statements under U.C.C. § 9-515).

As the *In re Shannon* court explained, through §§ 362(b)(3) and 546(b), "Congress sought only to prevent a trustee from

avoiding the lien of a creditor when only the intervening bankruptcy stopped the creditor from perfecting or continuing perfection of its lien." Thus, the purpose of these sections is to prevent creditors from losing their lien rights because of the bankruptcy; they do not permit creditors to retain possession of debtors' property. Indeed, if the nonbankruptcy law requires a creditor to seize property after the filing of a bankruptcy petition to perfect or maintain the perfection of a lien, § 546(b)(2) replaces the seizure requirement with the giving of notice. *See* 3 Collier on Bankruptcy ¶ 362.05. "This assures that the trustee's right to maintain possession of the property will be unaffected by the creditor's right to perfect its interest." *Id.* And the (b)(3) exception permits a creditor to give notice under § 546(b)(2) without violating the automatic stay.

Here, the City argues the Chicago Municipal Code (a non-bankruptcy law) gives it the right to retain possession of a debtor's vehicle until the debt is paid, thereby creating a possessory lien on the vehicle. *See, e.g.*, M.C.C. §§ 9-92-080(f), 9-100-120(b)–(c). It further asserts it must retain the vehicle to maintain perfection of its lien.

First, as to perfection, it is commonly understood that an interest in property is perfected when it is valid against other creditors who have an interest in the same property. *See Perfection*, Black's Law Dictionary (11th ed. 2019). The City's continued possession of a debtor's vehicle is one way to perfect its lien because it can demand the amount owed to it from any holder of an interest in the vehicle before it gives up possession, be that the debtor or another lienholder asserting its right to possession of the vehicle. *See* M.C.C. § 9-92-080(a), (c). However, possession is not the only way to perfect; the City can also perfect its lien by filing notice of its interest in the

vehicle, such as with the Secretary of State or the Recorder of Deeds. And the Chapter 13 plan, itself, provides a public record of secured liens. *See* 11 U.S.C. § 1325(a)(5) (regarding the rights of secured creditors related to confirmation of the plan). Thus, the City does not need to retain possession of the vehicle to maintain perfection of its lien.

Second, despite its arguments to the contrary, the City's possessory lien is not destroyed by its involuntary loss of possession due to forced compliance with the Bankruptcy Code's automatic stay. The City did not indicate any intent to abandon or release its lien, so its possessory lien survives its loss of possession to the bankruptcy estate. *See In re Estate of Miller*, 556 N.E.2d 568, 572 (Ill. App. Ct. 1990) ("The law respecting common law retaining liens is that the involuntary relinquishment of retained property pursuant to a court order does not result in the loss of the lien."); *see also In re Borden*, 361 B.R. 489, 495 (B.A.P. 8th Cir. 2007) ("[I]nvoluntary loss of possession does not defeat the [] lien."); Restatement (First) of Security § 80 cmt. c (1941) ("The lien is a legal interest dependent upon possession. Where the lienor voluntarily gives up the possession, his lien, at least so far as it is a legal interest, is gone. The lienor … does not lose his legal interest if he is deprived without his consent of his possession.").[3]

---

[3] The City's attempt to distinguish between loss of possession due to compliance with a court order versus compliance with the automatic stay is in vain. Section 362 provides for the imposition of punitive damages for willful violations of the automatic stay. *See* 11 U.S.C. § 362(k)(1). This demonstrates that failure to comply with the stay may be punished even more severely than failure to comply with a court order and, correspondingly, there is no question the stay *compels* the City to return the vehicles.

Because the City does not lose its perfected lien via the involuntary loss of possession of the debtors' vehicles to the bankruptcy estates, § 362(b)(3) does not apply to except it from the stay. To the extent the City has any doubt about the continuation of its lien, when it requests relief from the automatic stay and adequate protection, it could also ask the bankruptcy court to include in its order a notation of the City's continuing lien on the property.

2. *Section 362(b)(4)*

Alternatively, the City looks to § 362(b)(4) to except it from the stay. That section provides that a Chapter 13 bankruptcy petition does not operate as a § 362(a) automatic stay:

> of the commencement or continuation of an action or proceeding by a governmental unit … to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's … police or regulatory power.

11 U.S.C. § 362(b)(4). "This exception has been narrowly construed to apply to the enforcement of state laws affecting health, welfare, morals and safety, but not to 'regulatory laws that directly conflict with the control of the res or property by the bankruptcy court.'" *In re Cash Currency Exch., Inc.*, 762 F.2d 542, 555 (7th Cir. 1985) (quoting *In re Missouri*, 647 F.2d 768, 776 (8th Cir. 1981)). The City asserts its impoundment of vehicles is an exercise of its police power to enforce traffic regulations as a matter of public safety. The debtors respond that

the impoundment of vehicles enhances the City's revenue collection rather than protects public safety, and it is therefore an enforcement of a money judgment which § 362(b)(4) does not permit.

Courts apply two tests to determine whether a state's actions fall within the scope of § 362(b)(4)—the pecuniary purpose test and the public policy test. *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 385–86 (6th Cir. 2001); *In re First All. Mortg. Co.*, 263 B.R. 99, 107–08 (B.A.P. 9th Cir. 2001). Satisfying either test is sufficient for the exception to apply. *See First All. Mortg.*, 263 B.R. at 108; *see also* 3 Collier on Bankruptcy ¶ 362.05.

The pecuniary purpose test requires the court to "look to what specific acts the government wishes to carry out and determine if such execution would result in an economic advantage over third parties in relation to the debtor's estate." *Solis v. Caro*, No. 11-cv-6884, 2012 WL 1230824, at *5 (N.D. Ill. Apr. 12, 2012) (quoting *In re Emerald Casino, Inc.*, No. 03-cv-05457, 2003 WL 23147946, at *8 (N.D. Ill. Dec. 24, 2003)). "[I]f the focus of the police power is directed at the debtor's financial obligations rather than the [government's] health and safety concerns, the automatic stay is applicable." *In re Ellis*, 66 B.R. 821, 825 (N.D. Ill. 1986) (quoting *In re Sampson*, 17 B.R. 528, 530 (Bankr. D. Conn. 1982)). Though the City says its impoundment laws are "designed to further the safety and welfare of Chicago residents" with just an "ancillary pecuniary benefit," we disagree. In retaining possession of the vehicles until it is paid in full, the City is "attempting to satisfy a debt outside the bankruptcy process," which would give it an advantage over other parties interested in the debtors' estates.

*Emerald Casino*, 2003 WL 23147946, at *9. The City's act is focused on the debtor's financial obligation, not its safety concerns, and thus fails the pecuniary purpose test.

Alternatively, the public policy test considers whether the state action is principally to effectuate public policy or to adjudicate private rights. *Hosp. Staffing Servs.*, 270 F.3d at 385–86; *Caro*, 2012 WL 1230824, at *4. The public policy the City highlights is enforcing its traffic ordinances against repeat offenders "for the safety and convenience of the public." It explains the traffic ordinance system gradually escalates, beginning with the issuance of fines then intensifying to immobilization and impoundment only after an individual ignores repeat citations. Without impoundment as a general deterrence, the City argues, it cannot enforce its traffic regulations. *See Emerald Casino*, 2003 WL 23147946, at *6.

The debtors argue the balance between revenue collection and public safety weighs heavily toward the former. Additionally, prior to the 2016 Municipal Code amendment imposing a possessory lien on impounded vehicles, the City released impounded vehicles to Chapter 13 debtors. When the City recently amended the Code, it did not mention public safety concerns but rather stated the amendment was "in response to a growing practice of individuals attempting to escape financial liability for their immobilized or impounded vehicles." Chi., Ill., Ordinance, Amendment of M.C.C. § 9-100-120 (July 6, 2017).

We are persuaded that, on balance, this is an exercise of revenue collection more so than police power. As debtors observe, a not insignificant portion of the City's annual operating fund comes from its collection of parking and traffic tickets. *See* City of Chicago, 2019 Budget Overview 29, 192 (2018),

https://chicago.legistar.com/View.ashx?M=F&ID=6683992&
GUID=CAEFBC7F-7C1A-4B2E-9F8B-0CB931B3EE88 (fines,
forfeitures, and penalties—primarily from parking tickets—
constitute approximately nine percent of the 2019 fund).
Moreover, the kind of violations the City enforces are not tra-
ditional police power regulations; these fines are for parking
tickets, failure to display a City tax sticker, and minor moving
violations. Even tickets for a suspended license, a seemingly
more serious offense, are often the result of unpaid parking
tickets and are thus not related to public safety. And the City
impounds vehicles regardless of what violations the owner
has accrued, without distinguishing between more serious vi-
olations that could affect public safety versus the mere failure
to pay for parking. Most notably, the City imposes the mone-
tary penalty on the owner of the vehicle, not the driver, which
signals a seeming disconnect if the City actually has safety
concerns about the offending driver. As the ordinance
amending M.C.C. § 9-100-120 demonstrates, the City's focus
is on the financial liability of vehicle owners, not on public
safety.

But even if we assume that the adjudication of these viola-
tions is the result of the City's exercise of police and regula-
tory power, the City cannot enforce these final determinations
of liability if they are "money judgment[s]" as the term is used
in § 362(b)(4). *See* S. Rep. No. 95-989, at 52 (1978), *reprinted in*
1978 U.S.C.C.A.N. 5787, 5838 ("Since the assets of the debtor
are in the possession and control of the bankruptcy court, and
… constitute a fund out of which all creditors are entitled to
share, enforcement by a governmental unit of a money judg-
ment would give it preferential treatment to the detriment of
all other creditors."). A judgment is a "money judgment" that
cannot be enforced without violating the automatic stay if it

requires payment. 3 Collier on Bankruptcy ¶ 362.05 ("[T]he governmental unit still may commence or continue any police or regulatory action, including one seeking a money judgment, but *it may enforce only those judgments and orders that do not require payment*." (emphasis added)); *First All. Mortg.*, 263 B.R. at 107 (same); *see also* 3 Collier on Bankruptcy ¶ 362.05 ("Although a governmental unit may obtain a liability determination, *it may not collect* on any monetary judgment received." (emphasis added)); *SEC v. Brennan*, 230 F.3d 65, 71 (2d. Cir. 2000) ("[Section] 362(b)(4) permits the *entry* of a money judgment against a debtor … [but] *anything beyond the mere entry of a money judgment* against a debtor is prohibited by the automatic stay.").

The City claims it did not have money judgments "because it did not pursue the additional steps required to turn the citations into money judgments in the circuit court." We disagree. A "money judgment" is simply an order that identifies "the parties for and against whom judgment is being entered" and "a *definite* and *certain* designation of the amount … owed." *Penn Terra Ltd. v. Dep't of Envtl. Res.*, 733 F.2d 267, 275 (3d Cir. 1984). Prior to impounding a vehicle, the City must administratively adjudicate the debtor's violations, *see* M.C.C. § 9-100-010, and those adjudications result in a determination of final liability—*i.e.*, a judgment. Only after a debtor has two or three judgments against it does the Municipal Code authorize the City to impound the vehicle until the debtor pays the judgments and related costs and fees. *See id.* §§ 2-14-132(c)(1)(A), 9-92-080, 9-100-120(b). So, without any additional steps, the City had final determinations of liability requiring these particular debtors to pay it specific sums.

The City does not contest that it conditioned the release of the debtors' vehicles on payment of the amount specified in the final determinations of liability. *Cf. id.* § 9-100-100(b) ("Any fine and penalty … remaining unpaid after the notice of final determination of liability is sent shall constitute a debt due and owing the city …."). The continued possession of the vehicles is the City's attempt to short-circuit the state court collection process and to enforce final judgments requiring monetary payment from the debtors. As such, the City is not excepted from the stay under § 362(b)(4). That the City is not excepted under § 362(b)(4) does not "permit[] debtors to park for free wherever they like, or to drive without a risk of fines for moving violations …." *In re Steenes*, 918 F.3d 554, 558 (7th Cir. 2019). This just means the City needs to satisfy the debts owed to it through the bankruptcy process, as do all other creditors.

## III. Conclusion

For the foregoing reasons, we AFFIRM the judgments of the bankruptcy courts.