(Slip Opinion) OCTOBER TERM, 2020 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CITY OF CHICAGO, ILLINOIS *v.* FULTON ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 19–357. Argued October 13, 2020—Decided January 14, 2021

The filing of a petition under the Bankruptcy Code automatically "creates an estate" that, with some exceptions, comprises "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U. S. C. §541(a). Section 541 is intended to include within the estate any property made available by other provisions of the Bankruptcy Code. Section 542 is one such provision, as it provides that an entity in possession of property of the bankruptcy estate "shall deliver to the trustee, and account for" that property. The filing of a petition also automatically "operates as a stay, applicable to all entities," of efforts to collect prepetition debts outside the bankruptcy forum, §362(a), including "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," §362(a)(3). Here, each respondent filed a bankruptcy petition and requested that the city of Chicago (City) return his or her vehicle, which had been impounded for failure to pay fines for motor vehicle infractions. In each case, the City's refusal was held by a bankruptcy court to violate the automatic stay. The Seventh Circuit affirmed, concluding that by retaining possession of the vehicles the City had acted "to exercise control over" respondents' property in violation of §362(a)(3).

*Held*: The mere retention of estate property after the filing of a bankruptcy petition does not violate §362(a)(3) of the Bankruptcy Code. Under that provision, the filing of a bankruptcy petition operates as a "stay" of "any act" to "exercise control" over the property of the estate. Taken together, the most natural reading of these terms is that §362(a)(3) prohibits affirmative acts that would disturb the status quo of estate property as of the time when the bankruptcy petition was

filed.  Respondents' alternative reading would create at least two seri-ous problems.  First, reading §362(a)(3) to cover mere retention of prop-erty would render §542's central command—that an entity in posses-sion of certain estate property "shall deliver to the trustee . . . such property"—largely superfluous, even though §542 appears to be the provision governing the turnover of estate property.  Second, respond-ents' reading would render the commands of §362(a)(3) and §542 con-tradictory.  Section 542 carves out exceptions to the turnover com-mand.  Under respondents' reading, an entity would be required to turn over property under §362(a)(3) even if that property were exempt from turnover under §542.  The history of the Bankruptcy Code con-firms the better reading.  The Code originally included both §362(a)(3) and §542(a), but the former provision lacked the phrase "or to exercise control over property of the estate."  When that phrase was later added by amendment, Congress made no mention of transforming §362(a)(3) into an affirmative turnover obligation.  It is unlikely that Congress would have made such an important change simply by adding the phrase "exercise control," rather than by adding a cross-reference to §542(a) or some other indication that it was so transforming §362(a)(3).  Pp. 3–7.

 926 F. 3d 916, vacated and remanded.

 ALITO, J., delivered the opinion of the Court, in which all other Mem-bers joined, except BARRETT, J., who took no part in the consideration or decision of the case.  SOTOMAYOR, J., filed a concurring opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 19–357

_____

## CITY OF CHICAGO, ILLINOIS, PETITIONER *v.* ROBBIN L. FULTON, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

[January 14, 2021]

JUSTICE ALITO delivered the opinion of the Court.

When a debtor files a petition for bankruptcy, the Bankruptcy Code protects the debtor's interests by imposing an automatic stay on efforts to collect prepetition debts outside the bankruptcy forum. *Ritzen Group, Inc.* v. *Jackson Masonry, LLC*, 589 U. S. \_\_\_, \_\_\_–\_\_\_ (2020) (slip op., at 6–7). Those prohibited efforts include "any act . . . to exercise control over property" of the bankruptcy estate. 11 U. S. C. §362(a)(3). The question in this case is whether an entity violates that prohibition by retaining possession of a debtor's property after a bankruptcy petition is filed. We hold that mere retention of property does not violate §362(a)(3).

## I

Under the Bankruptcy Code, the filing of a bankruptcy petition has certain immediate consequences. For one thing, a petition "creates an estate" that, with some exceptions, comprises "all legal or equitable interests of the debtor in property as of the commencement of the case." §541(a)(1). Section 541 "is intended to include in the estate

any property made available to the estate by other provisions of the Bankruptcy Code." *United States* v. *Whiting Pools, Inc.*, 462 U. S. 198, 205 (1983). One such provision, §542, is important for present purposes. Titled "Turnover of property to the estate," §542 provides, with just a few exceptions, that an entity (other than a custodian) in possession of property of the bankruptcy estate "shall deliver to the trustee, and account for" that property.

A second automatic consequence of the filing of a bankruptcy petition is that, with certain exceptions, the petition "operates as a stay, applicable to all entities," of efforts to collect from the debtor outside of the bankruptcy forum. §362(a). The automatic stay serves the debtor's interests by protecting the estate from dismemberment, and it also benefits creditors as a group by preventing individual creditors from pursuing their own interests to the detriment of the others. Under the Code, an individual injured by any willful violation of the stay "shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." §362(k)(1).

Among the many collection efforts prohibited by the stay is "any act to obtain possession of property of the estate or of property from the estate or *to exercise control over property of the estate*." §362(a)(3) (emphasis added). The prohibition against exercising control over estate property is the subject of the present dispute.

In the case before us, the city of Chicago (City) impounded each respondent's vehicle for failure to pay fines for motor vehicle infractions. Each respondent filed a Chapter 13 bankruptcy petition and requested that the City return his or her vehicle. The City refused, and in each case a bankruptcy court held that the City's refusal violated the automatic stay. The Court of Appeals affirmed all of the judgments in a consolidated opinion. *In re Fulton*, 926 F. 3d 916 (CA7 2019). The court concluded that "by retaining possession of the debtors' vehicles after they declared

bankruptcy," the City had acted "to exercise control over" respondents' property in violation of §362(a)(3). *Id.,* at 924–925. We granted certiorari to resolve a split in the Courts of Appeals over whether an entity that retains possession of the property of a bankruptcy estate violates §362(a)(3).[1] 589 U. S. \_\_\_ (2019). We now vacate the judgment below.

## II

The language used in §362(a)(3) suggests that merely retaining possession of estate property does not violate the automatic stay. Under that provision, the filing of a bankruptcy petition operates as a "stay" of "any act" to "exercise control" over the property of the estate. Taken together, the most natural reading of these terms—"stay," "act," and "exercise control"—is that §362(a)(3) prohibits affirmative acts that would disturb the status quo of estate property as of the time when the bankruptcy petition was filed.

Taking the provision's operative words in turn, the term "stay" is commonly used to describe an order that "suspend[s] judicial alteration of the status quo." *Nken* v. *Holder*, 556 U. S. 418, 429 (2009) (brackets in original; internal quotation marks omitted). An "act" is "[s]omething done or performed . . . ; a deed." Black's Law Dictionary 30 (11th ed. 2019); see also Webster's New International Dictionary 25 (2d ed. 1934) ("that which is done," "the exercise of power," "a deed"). To "exercise" in the sense relevant here means "to bring into play" or "make effective in action." Webster's Third New International Dictionary 795 (1993). And to "exercise" something like control is "to put in practice or carry out in action." Webster's New International

---

[1] Compare *In re Fulton*, 926 F. 3d 916, 924 (CA7 2019), *In re Weber*, 719 F. 3d 72, 81 (CA2 2013), *In re Del Mission Ltd.*, 98 F. 3d 1147, 1151–1152 (CA9 1996), and *In re Knaus*, 889 F. 2d 773, 774–775 (CA8 1989), with *In re Denby-Peterson*, 941 F. 3d 115, 132 (CA3 2019), and *In re Cowen*, 849 F. 3d 943, 950 (CA10 2017).

Dictionary, at 892. The suggestion conveyed by the combination of these terms is that §362(a)(3) halts any affirmative act that would alter the status quo as of the time of the filing of a bankruptcy petition.

We do not maintain that these terms definitively rule out the alternative interpretation adopted by the court below and advocated by respondents. As respondents point out, omissions can qualify as "acts" in certain contexts, and the term "'control'" can mean "'to have power over.'" *Thompson* v. *General Motors Acceptance Corp.*, 566 F. 3d 699, 702 (CA7 2009) (quoting Merriam-Webster's Collegiate Dictionary 272 (11th ed. 2003)). But saying that a person engages in an "act" to "exercise" his or her power over a thing communicates more than merely "having" that power. Thus the language of §362(a)(3) implies that something more than merely retaining power is required to violate the disputed provision.

Any ambiguity in the text of §362(a)(3) is resolved decidedly in the City's favor by the existence of a separate provision, §542, that expressly governs the turnover of estate property. Section 542(a), with two exceptions, provides as follows:

> "[A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."

The exceptions to §542(a) shield (1) transfers of estate property made from one entity to another in good faith without notice or knowledge of the bankruptcy petition and (2) good-faith transfers to satisfy certain life insurance obligations.

See §§542(c), (d). Reading §362(a)(3) to cover mere retention of property, as respondents advocate, would create at least two serious problems.

First, it would render the central command of §542 largely superfluous. "The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Yates* v. *United States*, 574 U. S. 528, 543 (2015) (plurality opinion; internal quotation marks and brackets omitted). Reading "any act . . . to exercise control" in §362(a)(3) to include merely retaining possession of a debtor's property would make that section a blanket turnover provision. But as noted, §542 expressly governs "[t]urnover of property to the estate," and subsection (a) describes the broad range of property that an entity "shall deliver to the trustee." That mandate would be surplusage if §362(a)(3) already required an entity affirmatively to relinquish control of the debtor's property at the moment a bankruptcy petition is filed.

Respondents and their *amici* contend that §542(a) would still perform some work by specifying the party to whom the property in question must be turned over and by requiring that an entity "account for . . . the value of" the debtor's property if the property is damaged or lost. But that is a small amount of work for a large amount of text in a section that appears to be the Code provision that is designed to govern the turnover of estate property. Under this alternative interpretation, §362(a)(3), not §542, would be the chief provision governing turnover—even though §362(a)(3) says nothing expressly on that question. And §542 would be reduced to a footnote—even though it appears on its face to be the governing provision. The better account of the two provisions is that §362(a)(3) prohibits collection efforts outside the bankruptcy proceeding that would change the status quo, while §542(a) works within the bankruptcy process to draw far-flung estate property back into the hands of the debtor or trustee.

Second, respondents' reading would render the commands of §362(a)(3) and §542 contradictory. Section 542 carves out exceptions to the turnover command, and §542(a) by its terms does not mandate turnover of property that is "of inconsequential value or benefit to the estate." Under respondents' reading, in cases where those exceptions to turnover under §542 would apply, §362(a)(3) would command turnover all the same. But it would be "an odd construction" of §362(a)(3) to require a creditor to do immediately what §542 specifically excuses. *Citizens Bank of Md.* v. *Strumpf*, 516 U. S. 16, 20 (1995). Respondents would have us resolve the conflicting commands by engrafting §542's exceptions onto §362(a)(3), but there is no textual basis for doing so.

The history of the Bankruptcy Code confirms what its text and structure convey. Both §362(a)(3) and §542(a) were included in the original Bankruptcy Code in 1978. See Bankruptcy Reform Act of 1978, 92 Stat. 2570, 2595. At the time, §362(a)(3) applied the stay only to "any act to obtain possession of property of the estate or of property from the estate." *Id.*, at 2570. The phrase "or to exercise control over property of the estate" was not added until 1984. Bankruptcy Amendments and Federal Judgeship Act of 1984, 98 Stat. 371.

Respondents do not seriously dispute that §362(a)(3) imposed no turnover obligation prior to the 1984 amendment. But transforming the stay in §362 into an affirmative turnover obligation would have constituted an important change. And it would have been odd for Congress to accomplish that change by simply adding the phrase "exercise control," a phrase that does not naturally comprehend the mere retention of property and that does not admit of the exceptions set out in §542. Had Congress wanted to make §362(a)(3) an enforcement arm of sorts for §542(a), the least one would expect would be a cross-reference to the latter provision, but Congress did not include such a cross-

reference or provide any other indication that it was transforming §362(a)(3). The better account of the statutory history is that the 1984 amendment, by adding the phrase regarding the exercise of control, simply extended the stay to acts that would change the status quo with respect to intangible property and acts that would change the status quo with respect to tangible property without "obtain[ing]" such property.

\* \* \*

Though the parties debate the issue at some length, we need not decide how the turnover obligation in §542 operates. Nor do we settle the meaning of other subsections of §362(a).[2] We hold only that mere retention of estate property after the filing of a bankruptcy petition does not violate §362(a)(3) of the Bankruptcy Code. The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BARRETT took no part in the consideration or decision of this case.

---

[2] In respondent Shannon's case, the Bankruptcy Court determined that by retaining Shannon's vehicle and demanding payment, the City also had violated §§362(a)(4) and (a)(6). Shannon presented those theories to the Court of Appeals, but the court did not reach them. 926 F. 3d, at 926, n. 1. Neither do we.

# SUPREME COURT OF THE UNITED STATES

_____

No. 19–357

_____

CITY OF CHICAGO, ILLINOIS, PETITIONER *v.*
ROBBIN L. FULTON, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SEVENTH CIRCUIT

[January 14, 2021]

JUSTICE SOTOMAYOR, concurring.

Section 362(a)(3) of the Bankruptcy Code provides that the filing of a bankruptcy petition "operates as a stay" of "any act . . . to exercise control over property of the [bankruptcy] estate." 11 U. S. C. §362(a)(3). I join the Court's opinion because I agree that, as used in §362(a)(3), the phrase "exercise control over" does not cover a creditor's passive retention of property lawfully seized prebankruptcy. Hence, when a creditor has taken possession of a debtor's property, §362(a)(3) does not require the creditor to return the property upon the filing of a bankruptcy petition.

I write separately to emphasize that the Court has not decided whether and when §362(a)'s other provisions may require a creditor to return a debtor's property. Those provisions stay, among other things, "any act to create, perfect, or enforce any lien against property of the estate" and "any act to collect, assess, or recover a claim against [a] debtor" that arose prior to bankruptcy proceedings. §§362(a)(4), (6); see, *e.g., In re Kuehn,* 563 F. 3d 289, 294 (CA7 2009) (holding that a university's refusal to provide a transcript to a student-debtor "was an act to collect a debt" that violated the automatic stay). Nor has the Court addressed how bankruptcy courts should go about enforcing creditors' separate obligation to "deliver" estate property to the trustee or debtor under §542(a). The City's conduct may very well

violate one or both of these other provisions. The Court
does not decide one way or the other.

Regardless of whether the City's policy of refusing to re-
turn impounded vehicles satisfies the letter of the Code, it
hardly comports with its spirit. "The principal purpose of
the Bankruptcy Code is to grant a '"fresh start"'" to debt-
ors. *Marrama* v. *Citizens Bank of Mass.*, 549 U. S. 365, 367
(2007) (quoting *Grogan* v. *Garner*, 498 U. S. 279, 286
(1991)). When a debtor files for Chapter 13 bankruptcy, as
respondents did here, "the debtor retains possession of his
property" and works toward completing a court-approved
repayment plan. 549 U. S., at 367. For a Chapter 13 bank-
ruptcy to succeed, therefore, the debtor must continue earn-
ing an income so he can pay his creditors. Indeed, Chapter
13 bankruptcy is available only to "individual[s] with regu-
lar income." 11 U. S. C. §109(e).

For many, having a car is essential to maintaining em-
ployment. Take, for example, respondent George Peake.
Before the City seized his car, Peake relied on his 200,000-
mile 2007 Lincoln MKZ to travel 45 miles each day from his
home on the South Side of Chicago to his job in Joliet, Illi-
nois. In June 2018, when the City impounded Peake's car
for unpaid parking and red-light tickets, the vehicle was
worth just around $4,300 (and was already serving as col-
lateral for a roughly $7,300 debt). Without his car, Peake
had to pay for rides to Joliet. He filed for bankruptcy, hop-
ing to recover his vehicle and repay his $5,393.27 debt to
the City through a Chapter 13 plan. The City, however,
refused to return the car until either Peake paid $1,250 up-
front or after the court confirmed Peake's bankruptcy plan.
As a result, Peake's car remained in the City's possession
for months. By denying Peake access to the vehicle he
needed to commute to work, the City jeopardized Peake's
ability to make payments to *all* his creditors, the City in-
cluded. Surely, Peake's vehicle would have been more val-
uable in the hands of its owner than parked in the City's

impound lot.[1]

Peake's situation is far too common.[2]  Drivers in low-income communities across the country face similar vicious cycles: A driver is assessed a fine she cannot immediately pay; the balance balloons as late fees accrue; the local government seizes the driver's vehicle, adding impounding and storage fees to the growing debt; and the driver, now without reliable transportation to and from work, finds it all but impossible to repay her debt and recover her vehicle.  See Brief for American Civil Liberties Union et al. as *Amici Curiae* 11–16, 31–32.  Such drivers may turn to Chapter 13 bankruptcy for a "fresh start."  *Marrama*, 549 U. S., at 367 (internal quotation marks omitted).[3]  But without their vehicles, many debtors quickly find themselves unable to make their Chapter 13 payments.  The cycle thus continues, disproportionately burdening communities of color, see Brief for American Civil Liberties Union et al. as *Amici Curiae* 17, and interfering not only with debtors' ability to earn an income and pay their creditors but also with their access to childcare, groceries, medical appointments, and other necessities.

Although the Court today holds that §362(a)(3) does not

─────────

[1] Even though §362(a)(3) does not require turnover, whether and when the City may sell impounded cars is an entirely different matter.  See, *e.g., In re Cowen*, 849 F. 3d 943, 950 (CA10 2017) ("It's not hard to come up with examples of . . . 'acts' that 'exercise control' over, but do not 'obtain possession of,' the estate's property, e.g., a creditor in possession who improperly sells property belonging to the estate").

[2] See, *e.g.,* Ramos, Chicago Seized and Sold Nearly 50,000 Cars Over Tickets Since 2011, Sticking Owners With Debt, WBEZ News (Jan. 7, 2019) (online source archived at www.supremecourt.gov).

[3] The 10-year period from 2007 to 2017, for instance, saw a tenfold increase in the number of Chicagoans filing Chapter 13 bankruptcies that involved debt to the City.  See Sanchez & Kambhampati, Driven Into Debt: How Chicago Ticket Debt Sends Black Motorists Into Bankruptcy, ProPublica Illinois (Feb. 27, 2018) (online source archived at www.supremecourt.gov).

require creditors to turn over impounded vehicles, bank-
ruptcy courts are not powerless to facilitate the return of
debtors' vehicles to their owners. Most obviously, the Court
leaves open the possibility of relief under §542(a). That sec-
tion requires any "entity," subject to some exceptions, to
turn over "property" belonging to the bankruptcy estate. 11
U. S. C. §542(a). The debtor, in turn, must be able to pro-
vide the creditor with "adequate protection" of its interest
in the returned property, §363(e); for example, the debtor
may need to demonstrate that her car is sufficiently in-
sured. In this way, §542(a) maximizes value for all parties
involved in a bankruptcy: The debtor is able to use her as-
set, which makes it easier to earn an income; the debtor's
unsecured creditors, in turn, receive timely payments from
the debtor; and the debtor's secured creditor, for its part,
receives "adequate protection [to] replace the protection af-
forded by possession." *United States* v. *Whiting Pools, Inc.*,
462 U. S. 198, 207 (1983). Secured creditors cannot opt out
of this arrangement. As even the City acknowledges,
§542(a) "impose[s] a duty of turnover that is mandatory
when the statute's conditions . . . are met." Brief for Peti-
tioner 37.

The trouble with §542(a), however, is that turnover pro-
ceedings can be quite slow. The Federal Rules of Bank-
ruptcy Procedure treat most "proceeding[s] to recover . . .
property" as "adversary proceedings." Rule 7001(1). Such
actions are, in simplified terms, "essentially full civil law-
suits carried out under the umbrella of [a] bankruptcy
case." *Bullard* v. *Blue Hills Bank*, 575 U. S. 496, 505 (2015).
Because adversary proceedings require more process, they
take more time. Of the turnover proceedings filed after July
2019 and concluding before June 2020, the average case
was pending for over 100 days. See Administrative Office
of the United States Courts, Time Intervals in Months
From Filing to Closing of Adversary Proceedings Filed Un-
der 11 U. S. C. §542 for the 12-Month Period Ending June

30, 2020, Washington, DC: Sept. 25, 2020.

One hundred days is a long time to wait for a creditor to return your car, especially when you need that car to get to work so you can earn an income and make your bankruptcy-plan payments. To address this problem, some courts have adopted strategies to hurry things along. At least one bankruptcy court has held that §542(a)'s turnover obligation is automatic even absent a court order. See *In re Larimer*, 27 B. R. 514, 516 (Idaho 1983). Other courts apparently will permit debtors to seek turnover by simple motion, in lieu of filing a full adversary proceeding, at least where the creditor has received adequate notice. See Tr. of Oral Arg. 81 (counsel for the City stating that "[i]n most bankruptcy courts, if a creditor responds to a motion [for turnover] by" arguing that the debtor should have instituted an adversary proceeding, the bankruptcy judge will ask whether the creditor received "actual notice"); Brief for United States as *Amicus Curiae* 32 (reporting that "some courts have granted [turnover] orders based solely on a motion"); but see, *e.g., In re Denby-Peterson*, 941 F. 3d 115, 128–131 (CA3 2019) (holding that debtors must seek turnover through adversary proceedings). Similarly, even when a turnover request does take the form of an adversary proceeding, bankruptcy courts may find it prudent to expedite proceedings or order preliminary relief requiring temporary turnover. See, *e.g., In re Reid*, 423 B. R. 726, 727–728 (Bkrtcy. Ct. ED Pa. 2010); see generally 10 Collier on Bankruptcy ¶ 7065.02 (16th ed. 2019).

Ultimately, however, any gap left by the Court's ruling today is best addressed by rule drafters and policymakers, not bankruptcy judges. It is up to the Advisory Committee on Rules of Bankruptcy Procedure to consider amendments to the Rules that ensure prompt resolution of debtors' requests for turnover under §542(a), especially where debtors' vehicles are concerned. Congress, too, could offer a statu-

tory fix, either by ensuring that expedited review is available for §542(a) proceedings seeking turnover of a vehicle or by enacting entirely new statutory mechanisms that require creditors to return cars to debtors in a timely manner.

Nothing in today's opinion forecloses these alternative solutions. With that understanding, I concur.