**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3562
_____


In re: JOY DENBY-PETERSON,
                                        Appellant
_____


Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-17-cv-09985)
District Judge: Hon. Noel L. Hillman
_____


Argued May 23, 2019
_____


Before: McKEE, SHWARTZ, and FUENTES, *Circuit Judges*.


(Filed: October 28, 2019)
_____

Ellen M. McDowell [Argued]
Daniel Reinganum
McDowell Law
46 West Main Street
P.O. Box 127
Maple Shade, NJ 08052

     *Counsel for Appellant*

Craig Goldblatt [Argued]
WilmerHale
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006

     *Counsel for Amicus Curiae in Support of the District
Court's Judgment*

_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*.

At the center of this bankruptcy appeal is "America's first sports car": the Chevrolet Corvette.[1] Joy Denby-Peterson purchased a Chevrolet Corvette in July 2016. Several months later, the Corvette was repossessed by creditors after Denby-Peterson defaulted on her car payments. Denby-Peterson subsequently filed an emergency voluntary Chapter 13 petition in the Bankruptcy Court for the District of New

---

[1] H.R. Res. 970, 110th Cong. (2008).

Jersey. She then notified the creditors of the bankruptcy filing and demanded that they return the Corvette to her.

After the creditors did not comply with her demand, Denby-Peterson filed a motion for turnover in the Bankruptcy Court. She sought an order (1) compelling the creditors to return the Corvette to her, and (2) imposing sanctions for the creditors' alleged violation of the Bankruptcy Code's automatic stay.[2] The Bankruptcy Court entered an order mandating turnover of the Corvette to Denby-Peterson but denying Denby-Peterson's request for sanctions. The Bankruptcy Court denied the sanctions request on the basis that the creditors did not violate the automatic stay by failing to return the repossessed Corvette to Denby-Peterson upon receiving notice of the bankruptcy filing. Denby-Peterson appeals from an order of the District Court affirming the Bankruptcy Court.

We are now presented with an issue of first impression for our Court: whether, upon notice of the debtor's bankruptcy, a secured creditor's failure to return collateral that was repossessed pre-bankruptcy petition is a violation of the automatic stay. We answer in the negative, and thus join the minority of our sister courts—the Tenth and D.C. Circuits—in holding that a secured creditor does not have an affirmative obligation under the automatic stay to return a debtor's collateral to the bankruptcy estate immediately upon notice of the debtor's bankruptcy because failure to return the collateral received pre-petition does not constitute "an[] act . . . to exercise control over property of the estate."[3] We will

_____

[2] *See* 11 U.S.C. §§ 362(a)(3), (k).
[3] *Id.* § 362(a)(3).

3

therefore affirm the order of the District Court affirming the Bankruptcy Court.

## I.

### A. Facts

On July 21, 2016, Debtor Joy Denby-Peterson purchased a used yellow 2008 Chevrolet Corvette from a car dealership named Pine Valley Motors. To finance her purchase, Denby-Peterson entered into a retail installment contract with Pine Valley Motors, which, in turn, assigned its rights under the contract to its affiliate company, NU2U Auto World.[4] Under the contract, Denby-Peterson agreed to pay (1) a $3,000 cash down payment; (2) a deferred down payment of $2,491 by August 11, 2016 to pay sales taxes and registration fees to obtain permanent license plate tags; and (3) weekly installment payments of $200 for 212 weeks. Between July 2016 and February 2017, Denby-Peterson made payments totaling $9,200 under the contract, including the $3,000 down payment applied on the day of the sale. She never made the required down payment of $2,491. As a result, the creditors repossessed the Corvette in February or March 2017.[5] The

---

[4] For the sake of brevity, we will collectively refer to Pine Valley Motors and NU2U Auto World as "the creditors."

[5] The retail installment contract's "repossession" clause states, in relevant part: "[i]f you are in default, we may take the vehicle from you after we give you any notice required by law." Bankr. Petition No. 17-15532-ABA, Doc. No. 17-5 at 3. "Default," in turn, is defined as including, among other things: (1) "failure to pay any installment when due"; (2) "failure to perform or breach of any section of th[e] contract";

4

Corvette was never titled or registered in Denby-Peterson's name.

## B. Bankruptcy Court Proceedings

### i. Denby-Peterson's Chapter 13 Bankruptcy Petition

After the Corvette was repossessed, Denby-Peterson filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on March 21, 2017. Under Section 362 of the Code, the filing of the petition triggered an automatic stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."[6]

Within two days, the creditors received notice of Denby-Peterson's bankruptcy filing. Counsel for Denby-Peterson had notified them of the filing and demanded that they return the Corvette to Denby-Peterson. Counsel also maintained that the creditors' failure to return the Corvette

---

and (3) "failure to obtain and maintain the insurance required by th[e] contract." *Id.*

Before the Bankruptcy Court, the parties disputed the date of repossession. Denby-Peterson claimed that the Corvette was repossessed on March 13, 2017, while the creditors claimed that it was repossessed one month earlier, in February 2017. All parties nevertheless agree that the repossession occurred before Denby-Peterson filed for bankruptcy.

[6] 11 U.S.C. § 362(a)(3).

would result in a violation of the automatic stay. He faxed a letter to the creditors which stated, in relevant part:

> **BE ADVISED** your failure to release the vehicle to Ms. Denby-Peterson is a violation of the Automatic Stay. If the vehicle has not been released before 5pm today, this firm will seek damages, costs, and attorneys' fees against your company for willful violations of the automatic stay.[7]

The creditors did not comply with Denby-Peterson's demand and thus remained in possession of the Corvette.

### ii. Denby-Peterson's Motion for Turnover and Sanctions

Denby-Peterson then filed a motion[8] for turnover in Bankruptcy Court, asking the Bankruptcy Court to (1) order the creditors to return the Corvette to her, and (2) impose sanctions for the creditors alleged violation of the automatic stay. Denby-Peterson sought costs and attorneys' fees for filing the motion; compensation for "non-economic

---

[7] Bankr. Petition No. 17-15532-ABA, Doc. No. 5-3 at 3. *See* 11 U.S.C. § 362(k)(1).

[8] The motion was entitled "motion for return of repossessed auto and seeking sanctions against creditor for violat[ing] the automatic stay." Bankr. Petition No. 17-15532-ABA, Doc. No. 5 (original in uppercase and bold).

damages"; punitive damages; and "all other relief the Court deem[ed] just and equitable."[9]

The creditors opposed the motion. They also filed a proof of claim, asserting a security interest in the Corvette in the amount of $28,773.[10]

### iii. The Bankruptcy Court's Decision

Following a two-day hearing, the Bankruptcy Court issued a written decision and order granting the motion in part and denying it in part. The Bankruptcy Court, *inter alia*, granted Denby-Peterson's request for turnover and thus ordered the creditors to return the Corvette to Denby-Peterson within seven days, but denied Denby-Peterson's sanctions request.

---

[9] Bankr. Petition No. 17-15532-ABA, Doc. No. 5-7 at 3. *See* 11 U.S.C. § 362(k)(1) (stating, in relevant part, that "an individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages"); *see also In re Lansaw*, 853 F.3d 657, 667 (3d Cir. 2017), *cert. denied sub nom. Zokaites v. Lansaw*, 138 S. Ct. 1001 (2018) ("expressly concluding that 'actual damages' under § 362(k)(1) include damages for emotional distress resulting from a willful violation of the automatic stay.").

[10] The retail installment contract's "security interest" clause provides that (1) Denby-Peterson gave the creditors a security interest in, *inter alia*, the Corvette, and (2) the security interest "cover[ed] all amounts [she] owe[d]." Bankr. Petition No. 17-15532-ABA, Doc. No. 17-5 at 3.

The Bankruptcy Court held, *inter alia*, that (1) the creditors must return the Corvette under the Bankruptcy Code's turnover provision in Section 542(a),[11] and (2) the creditors did not violate the automatic stay by retaining possession of the Corvette upon receiving notice of the bankruptcy filing. Thus, the Bankruptcy Court determined that the creditors were not liable for sanctions based on an alleged violation of the automatic stay.

In reaching its holdings, the Bankruptcy Court found that Denby-Peterson had an equitable interest in the Corvette at the time of the bankruptcy filing, and therefore, the Corvette was property of the estate subject to turnover.[12]

Next, the Bankruptcy Court considered whether the creditors violated the automatic stay by failing to return the Corvette after learning of the bankruptcy filing. It identified the split among our sister circuits on this issue, pointing out that the Second, Seventh, Eighth, and Ninth Circuits ("the majority") have held that the Bankruptcy Code's turnover provision requires immediate turnover of estate property that was seized pre-petition and that failure to do so violates the

---

[11] *See* 11 U.S.C. § 542(a) (stating, in relevant part, that "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the [debtor] may use, sell, or lease under section 363 of this title . . . shall deliver to the [debtor], and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate").

[12] *See id.* § 541(a) (defining "property of the estate," in relevant part, as "all legal or equitable interests of the debtor in property as of the commencement of the case").

automatic stay.[13] However, the Tenth and D.C. Circuits ("the minority") "have instead held that a creditor does not violate the stay in regard to property of the estate if it merely maintains the status quo."[14] The Bankruptcy Court noted that the minority was critical of the majority's rule that Section 542(a)'s turnover provision "is self-effectuating" because "it does not allow for the possibility of defenses to turnover."[15]

The Bankruptcy Court ultimately adopted the minority position, describing it as "particularly persuasive"[16] and pointing out that "[f]rom the inception of this case there was an issue regarding exactly what . . . [Denby-Peterson]'s interest in . . . [the Corvette] was."[17] Accordingly, the Bankruptcy Court concluded that the creditors did not violate the automatic stay by failing to turn over the Corvette to Denby-Peterson "prior to adjudication of . . . [her] right to

---

[13] *See In re Fulton*, 926 F.3d 916 (7th Cir. 2019); *In re Weber*, 719 F.3d 72 (2d Cir. 2013); *In re Del Mission Ltd.*, 98 F.3d 1147 (9th Cir. 1996); *In re Knaus*, 889 F.2d 773 (8th Cir. 1989); *see also In re Rozier*, 376 F.3d 1323, 1324 (11th Cir. 2004) (per curiam) (holding that the "district court did not err by affirming the bankruptcy court's order holding [the creditor] in willful contempt of the automatic stay . . . by refusing to return the vehicle").

[14] *In re Denby-Peterson*, 576 B.R. 66, 80 (Bankr. D.N.J. 2017) (citing *In re Cowen*, 849 F.3d 943 (10th Cir. 2017); *United States v. Inslaw, Inc.*, 932 F.2d 1467 (D.C. Cir. 1991)).

[15] *Denby-Peterson*, 576 B.R. at 82.

[16] *Id.*

[17] *Id.*

9

redeem the [Corvette]," and thus, sanctions were not warranted.[18]

## C. Denby-Peterson's Appeal to the District Court

Denby-Peterson appealed the Bankruptcy Court's order denying her sanctions request. Similar to the Bankruptcy Court, the District Court found "the minority position more persuasive."[19] The District Court thus affirmed the Bankruptcy Court's order denying Denby-Peterson's sanctions request.[20]

Denby-Peterson now appeals to our Court.[21] Because the creditors are not participating in this appeal, we appointed

---

[18] *Id.* at 83.

[19] *Denby-Peterson v. Nu2u Auto World*, 595 B.R. 184, 190 (D.N.J. 2018).

[20] While Denby-Peterson's appeal to the District Court was pending, the Bankruptcy Court dismissed the underlying bankruptcy case based on Denby-Peterson's failure to make all required pre-confirmation payments to the Trustee. Before addressing the merits of the appeal, the District Court concluded that Denby-Peterson's appeal was not mooted by the dismissal because the automatic-stay-related issue "is an ancillary issue not closely intertwined with the underlying bankruptcy." *Denby-Peterson*, 595 B.R. at 188.

[21] The District Court had jurisdiction under 28 U.S.C. § 158 (a). We have jurisdiction under 28 U.S.C. § 158(d)(1). Because the District Court acted as an appellate court, we review its determinations *de novo*. *In re Bocchino*, 794 F.3d 376, 379 (3d Cir. 2015). We review the legal conclusions of

Craig Goldblatt as *amicus curiae* to defend the judgment of the District Court.[22]

## II.

On appeal, Denby-Peterson renews her argument that the creditors violated the automatic stay by not returning the repossessed Corvette upon learning of the bankruptcy filing. To provide context for the issue before us, we will discuss the Bankruptcy Code's automatic stay before addressing the merits of this appeal.

Under Section 362 of the Bankruptcy Code, entitled "[a]utomatic stay," the filing of a bankruptcy petition automatically triggers a stay.[23] Of particular relevance to this appeal, subsection (a)(3) provides that a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to

---

the Bankruptcy Court *de novo* and its factual determinations for clear error. *Id.* at 380.

Generally, "[t]he imposition or denial of sanctions is subject to abuse-of-discretion review." *In re Miller*, 730 F.3d 198, 203 (3d Cir. 2013). We have not, however, addressed our standard of review for the imposition or denial of sanctions for violations of the automatic stay. We nevertheless need not do so now given that (1) the Bankruptcy Court denied sanctions based on its conclusion that the creditors did not violate the automatic stay, and (2) we now hold that both the Bankruptcy Court and the District Court correctly concluded that there was no such violation.

[22] We thank Mr. Goldblatt for his excellent briefing and oral advocacy in this matter.

[23] 11 U.S.C. § 362.

11

obtain possession of property of the estate . . . or to exercise control over property of the estate."[24] Property of the bankruptcy estate, in turn, generally includes "all legal or equitable interests of the debtor in property as of the commencement of the case,"[25] "wherever located and by whomever held."[26]

The automatic stay imposed by the Bankruptcy Code has a "twofold" purpose:

> (1) to protect the debtor, by stopping all collection efforts, harassment, and foreclosure actions, thereby giving the debtor a respite from creditors and a chance 'to attempt a repayment or reorganization plan or simply be relieved of the financial pressures that drove him [or her] into bankruptcy;' and (2) to protect 'creditors by preventing particular creditors from acting unilaterally in self-interest to obtain payment

---

[24] *Id.* § 362(a)(3). *See* H.R. Rep. No. 95-595, at 340 (1977) (stating that "[s]ubsection (a) defines the scope of the automatic stay, by listing the acts that are stayed by the commencement of the case").

[25] 11 U.S.C. § 541(a)(1).

[26] *Id.* § 541(a). In a Chapter 13 case, such as this case, the concept of property of the estate is broader. *See id.* § 1306 (a)(1) (providing that the Chapter 13 estate includes, in addition to the property specified in Section 541, property "that the debtor acquires after the commencement of the bankruptcy case" but before the case is either closed, dismissed, or converted).

from a debtor to the detriment of other creditors.'[27]

In furtherance of the automatic stay's overarching purpose, Section 362(a)(3) "prevent[s] dismemberment of the estate," and enables an "orderly" distribution of the debtor's assets.[28]

The consequences for willful violations of the automatic stay are set forth in Section 362(k) which provides that, subject to one exception, "an individual injured by any willful violation" of the automatic stay is entitled to "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."[29] We have explained that "[i]t is a willful violation of the automatic stay when a creditor violates the stay with knowledge that the bankruptcy petition has been filed. Willfulness does not require that the creditor intend to violate

---

[27] *Constitution Bank v. Tubbs*, 68 F.3d 685, 691 (3d Cir. 1995) (quoting *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991)). *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1804 (2019) (explaining that the automatic stay "aims to prevent damaging disruptions to the administration of a bankruptcy case in the short run"); *Inslaw*, 932 F.2d at 1473 ("The object of the automatic stay provision is essentially to solve a collective action problem—to make sure that creditors do not destroy the bankrupt estate in their scramble for relief.").

[28] H.R. Rep. No. 95-595, at 341.

[29] 11 U.S.C. § 362(k)(1). *See id.* § 362(k)(2) (providing a "good faith" exception to Section 362(k)(1)).

the automatic stay provision, rather it requires that the acts which violate the stay be intentional."[30]

## III.

With the foregoing statutory background in mind, we now turn our attention to the issue of first impression before our Court: whether, upon receiving notice of a bankruptcy petition, a secured creditor violates the automatic stay by maintaining possession of collateral that it lawfully repossessed pre-petition. Specifically, we must decide whether the creditors' failure to return the Corvette to Denby-Peterson upon learning of her bankruptcy filing was a violation of the automatic stay.[31]

As we previously acknowledged, there is a circuit split on this issue, which we have not yet joined. Under the majority position, held by the Second, Seventh, Eighth, Ninth, and Eleventh Circuits, a secured creditor, upon learning of the bankruptcy filing, must return the collateral to the debtor and failure to do so violates the automatic stay.[32] However, both the Tenth and D.C. Circuits disagree with the majority's

---

[30] *In re Lansdale Family Rests., Inc.*, 977 F.2d 826, 829 (3d Cir. 1992) (internal citations omitted).

[31] It is undisputed here that the creditors repossessed the Corvette before Denby-Peterson had filed for bankruptcy and that the Corvette was property of Denby-Peterson's bankruptcy estate.

[32] *See Fulton*, 926 F.3d 916; *Weber*, 719 F.3d 72; *Del Mission*, 98 F.3d 1147; *Knaus*, 889 F.2d 773; *Rozier*, 376 F.3d 1323.

interpretation of the automatic stay provision.[33] Under their view, a secured creditor is not obligated to return the collateral to the debtor until the debtor obtains a court order from the Bankruptcy Court requiring the creditor to do so. Thus, according to the minority, a creditor does not violate the automatic stay by retaining possession of the collateral after being notified of the bankruptcy filing.

Here, Denby-Peterson urges us to adopt the view of the majority of our sister circuits, advancing two theories in support of her position that the creditors violated the automatic stay. First, she maintains that the creditors' failure to return the Corvette violated the plain language of Section 362(a)(3)'s automatic stay provision by being "an[] act . . . to exercise control over property of the estate."[34] Second, Denby-Peterson asserts that Section 362(a)(3)'s automatic stay provision and Section 542(a)'s turnover provision operate together such that a violation of the turnover provision results in a violation of the automatic stay. Thus, according to Denby-Peterson, the creditors were required to immediately turn over the Corvette, and by not doing so, they violated the automatic stay. For the reasons that follow, we are not persuaded by those arguments and thus hold that the creditors in this case did not violate the automatic stay. In so holding, we join the minority of our sister circuits.

---

[33] *See Cowen*, 849 F.3d 943; *Inslaw*, 932 F.2d 1467.
[34] 11 U.S.C. § 362(a)(3).

## IV.

## A.

We begin our interpretation of Section 362(a)(3) of the Bankruptcy Code "where all such inquiries must begin: with the language of the statute itself."[35]

In examining the Bankruptcy Code, we are not "guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy."[36] Thus, to determine the plainness or ambiguity of Section 362(a)(3)'s statutory language, in addition to considering the statutory language itself, we may also engage in "a studied examination of the statutory context."[37] If we ultimately determine that a provision "is clear and unambiguous, [we]

---

[35] *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69 (2011) (internal quotation marks omitted).

[36] *Kelly v. Robinson*, 479 U.S. 36, 43 (1986) (internal quotation marks omitted). *See In re Price*, 370 F.3d 362, 369 (3d Cir. 2004) (emphasizing that "in interpreting the Bankruptcy Code, the Supreme Court has been reluctant to declare its provisions ambiguous, preferring instead to take a broader, contextual view"); *Official Comm. of Unsecured Creditors of Cybergenics Corp., ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 559 (3d Cir. 2003) ("Statutory construction is a holistic endeavor, and this is especially true of the Bankruptcy Code." (quotation marks, alterations and citations omitted)).

[37] *Price*, 370 F.3d at 369.

must simply apply it."[38] However, if we find that a provision is ambiguous,[39] "we then turn to pre-Code practice and legislative history to find meaning."[40]

With these principles of construction in mind, we will now examine the language of Section 362(a)(3). To reiterate, Section 362(a)(3) provides, in relevant part, that the filing of a bankruptcy petition "operates as a stay . . . of . . . any act to . . . exercise control over property of the estate."[41] According to Denby-Peterson, under the plain language of the automatic stay, a creditor who does not turn over property of the estate after a debtor demands its return exercises control over that property, thereby violating the automatic stay. While we agree that Section 362(a)(3) is unambiguous, we decline to hold that a plain reading of that Section compels the conclusion that the creditors in this case violated the automatic stay by failing to turn over the Corvette to Denby-Peterson.

The operative terms and phrases of Section 362(a)(3) are "stay," "act," and "exercise control." Because the

---

[38] *In re KB Toys Inc.*, 736 F.3d 247, 251 (3d Cir. 2013) (citing *Roth v. Norfalco L.L.C.*, 651 F.3d 367, 379 (3d Cir. 2011)).

[39] *See Price*, 370 F.3d at 369 (explaining that "a provision is ambiguous when, despite a studied examination of the statutory context, the natural reading of a provision remains elusive").

[40] *In re Friedman's Inc.*, 738 F.3d 547, 554 (3d Cir. 2013).

[41] 11 U.S.C. § 362(a)(3).

Bankruptcy Code does not define them, we must look to their ordinary meanings.[42]

We start with the meaning of the word "stay." *Black's Law Dictionary* defines "stay" as "[t]he postponement or halting of a proceeding, judgment, or the like" or "[a]n order to suspend all or part of a judicial proceeding or a judgment resulting from that proceeding."[43] Moreover, *Webster's Third New International Dictionary* defines "stay" as a noun (as it is used in Section 362) as: (1) "a bringing to a stop," (2) "the action of halting," and (3) "the state of being stopped."[44]

Next, the noun "act" means, among other things, "[s]omething done; the action or process of achieving this."[45] *Black's Law Dictionary* similarly defines "act," in relevant

---

[42] *See Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759 (2018).

[43] Stay, *Black's Law Dictionary* (11th ed. 2019). Black's Law Dictionary further defines "automatic stay" as "[a] bar to all judicial and extrajudicial collection efforts against the debtor or the debtor's property, subject to specific statutory exceptions." *Id.*

[44] *Webster's Third New International Dictionary* 2231 (1993); *see* Stay, Oxford English Dictionary Online, https://www.oed.com/view/Entry/189408?rskey=uCJBz6& result=3&isAdvanced=false (including, among its definitions of "stay," "[t]he action of stopping or bringing to a stand or pause") (last visited Aug. 15, 2019).

[45] Act, Oxford English Dictionary Online, https://www.oed.com/view/Entry/1888?rskey=eprROF& result=4 (last visited Aug. 15, 2019).

part, as "[s]omething done or performed," or "[t]he process of doing or performing."[46]

Finally, as to the phrase "exercise control," we will separately consider the verb "exercise" and the noun "control." The relevant definition of "exercise" is "[t]o put in action or motion."[47] *Webster's Third New International Dictionary* also defines "exercise," in relevant part, as "to . . . make effective in action."[48] Additionally, "control," as a noun, means, among other things, "[t]he fact or power of directing and regulating the actions of people or things; direction, management; command."[49]

From these definitions, we gather that Section 362(a)(3) prohibits creditors from taking any affirmative act to exercise control over property of the estate. As correctly pointed out by the District Court, the statutory language "is prospective in nature . . . the *exercise* of control is not stayed,

---

[46] Act, *Black's Law Dictionary* (11th ed. 2019).

[47] Exercise, Oxford English Dictionary Online, https://www.oed.com/view/Entry/66089?rskey=QNVdyF& result=2&isAdvanced=false (last visited Aug. 15, 2019); *see* Exercise, *Black's Law Dictionary* (11th ed. 2019) (describing "exercise" as meaning, in relevant part, "[t]o make use of; to put into action").

[48] *Webster's Third New International Dictionary* 795.

[49] Control, Oxford English Dictionary Online, https://www.oed.com/view/Entry/40562?rskey=qZlHZj& result=1 (last visited Aug. 15, 2019); *see* Control, *Black's Law Dictionary* (11th ed. 2019) (identifying "the power or authority to manage, direct, or oversee" as one of the definitions of "control").

19

but the *act to* exercise control is stayed."[50] Therefore, we agree with the minority position held by two of our sister courts—the text of Section 362(a)(3) requires a post-petition affirmative act to exercise control over property of the estate.[51]

## B.

Here, a post-petition affirmative act to exercise control over the Corvette is not present. The creditors repossessed the Corvette before Denby-Peterson had filed for bankruptcy. Accordingly, pre-bankruptcy petition, the creditors had possession and control of the Corvette, and post-bankruptcy petition, the creditors merely passively retained that same possession and control. Although the creditors exercised control over the Corvette by keeping it in their possession after learning of the bankruptcy filing, the requisite post-petition affirmative "act . . . to exercise control over" the Corvette is not present in this case.[52] An application of the plain language of the statute to the facts of this case thus shows that the creditors did not violate the automatic stay.[53]

---

[50] *Denby-Peterson*, 595 B.R. at 190.

[51] *See Cowen*, 849 F.3d at 949 (concluding that Section 362(a)(3) "stays entities from *doing* something to . . . exercise control over the estate's property"); *Inslaw*, 932 F.2d at 1474 ("The automatic stay, as its name suggests, serves as a restraint only on acts to gain possession or control over property of the estate.").

[52] 11 U.S.C. § 362(a)(3).

[53] Denby-Peterson's characterization of the creditors' post-petition behavior as a refusal to return the Corvette upon request does not alter our conclusion. A creditor's refusal to comply with a debtor's turnover request is not an affirmative

20

Our conclusion is bolstered by the legislative purpose and underlying policy goals of the automatic stay. It is well-established that one of the automatic stay's primary purposes is "'*to maintain the status quo* between the debtor and [his] creditors, thereby affording the parties and the [Bankruptcy] Court an opportunity to appropriately resolve competing economic interests in an orderly and effective way.'"[54] Here, the creditors had possession of the Corvette both before and after the bankruptcy filing. Thus, by keeping possession of the Corvette after learning of the bankruptcy filing, the creditors preserved the pre-petition status quo. To hold that such a retention of possession violates the automatic stay would directly contravene the status-quo aims of the automatic stay.

In sum, the plain language of the automatic stay provision in Section 362(a)(3) and the automatic stay's legislative purpose indicate that Congress did not intend passive retention to qualify as "an act to . . . exercise control over property of the estate."[55] In light of our interpretation of Section 362(a)(3), we thus hold that the creditors did not

---

act; rather, it is inaction. Denby-Peterson's attempt to reframe creditors' failure to act as an affirmative act is unavailing as it does not alter the passive nature of the creditors' post-petition role in relation to the Corvette. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 555 (2012) (recognizing "the distinction between doing something and doing nothing").

[54] *Taylor v. Slick*, 178 F.3d 698, 702 (3d Cir. 1999) (quoting *Zeoli v. RIHT Mortg. Corp.*, 148 B.R. 698, 700 (D.N.H. 1993)) (emphasis and alteration in original).

[55] 11 U.S.C. § 362(a)(3).

engage in a post-petition "act to . . . exercise control" over the Corvette and thus did not violate the automatic stay. [56]

## C.

Denby-Peterson, on the other hand, disregards the automatic stay's legislative purpose and instead relies on Section 362(a)(3)'s scarce legislative history to support her position. She maintains that her "plain language reading of Section 362 is bolstered by the 1984 Amendments to the Bankruptcy Code."[57] We disagree.

Given Section 362(a)(3)'s unambiguous text, we need not resort to legislative history to uncover its meaning.[58] In any event, we point out that the relevant legislative history fails to shed light on Congress's intent behind the 1984 addition of the "exercise control over property of the estate" clause. The legislative history reveals that, as originally enacted in 1978, Section 362(a)(3) only stayed "any act to obtain possession of property of the estate or of property from the estate."[59] Thereafter, in 1984, Congress amended Section 362(a)(3) by inserting the "or to exercise control over

---

[56] *Id.*

[57] Appellant's Br. at 13.

[58] *See Doe v. Hesketh*, 828 F.3d 159, 167 (3d Cir. 2016).

[59] Bankruptcy Reform Act of 1978, Pub. L. 95-598, § 362 (a)(3), 92 Stat. 2549, 2570 (1978).

22

property of the estate" clause.[60] Congress, however, "gave no explanation of its intent."[61]

Denby-Peterson nevertheless urges us to follow the Seventh Circuit's view that "the mere fact that Congress expanded the provision to prohibit conduct above and beyond obtaining possession of an asset suggests that it intended to include conduct by creditors who seized an asset pre-petition."[62] We will not do so because the legislative history would be pertinent only to the extent that Congress clearly expressed an intent to interpret Section 362(a)(3) contrary to its plain language. Here, Congress did not express any intent, much less an intent to include creditors' passive retention of property that was seized pre-petition.[63] Moreover, even

---

[60] Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, § 362(a)(3), 98 Stat. 333, 371 (1984).

[61] *In re Young*, 193 B.R. 620, 623 (Bankr. D.D.C. 1996).

[62] *Thompson v. Gen. Motors Acceptance Corp., LLC*, 566 F.3d 699, 702 (7th Cir. 2009). *See Fulton*, 926 F.3d at 923 (declining to overrule *Thompson* and reiterating that the amendment "suggested congressional intent to make the stay more inclusive by including conduct of 'creditors who seized an asset pre-petition'" (quoting *Thompson*, 566 F.3d at 702)); *see also Weber*, 719 F.3d at 80 (describing the amendment as a "significant textual enlargement" that supports the view that "Congress intended to prevent creditors from retaining property of the debtor in derogation of the bankruptcy procedure . . . without regard to what party was in possession of the property in question when the petition was filed").

[63] *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980) ("Absent a clearly expressed

assuming that Section 362(a)(3) is ambiguous, thereby warranting consideration of legislative history, the legislative history's silence provides no guidance regarding Congress's rationale for adding the "or to exercise control over property of the estate" clause. Accordingly, the interpretation that Denby-Peterson urges us to adopt is unsupported by Section 362(a)(3)'s legislative history as well as its statutory language.

## V.

We now consider Denby-Peterson's final attempt to overcome the plain language of Section 362(a)(3). Denby-Peterson asserts that Section 362's automatic stay should be read in conjunction with Section 542(a)'s allegedly self-effectuating turnover provision. We are not persuaded.

Under Section 542(a), creditors who are in possession of property of the estate must turn over such property to the debtor "during the [Bankruptcy] case."[64] The turnover provision states, in relevant part, that "an entity, other than a custodian," such as a creditor,[65]

---

legislative intention to the contrary, th[e] [statutory] language must ordinarily be regarded as conclusive.").

[64] 11 U.S.C. § 542(a). In a Chapter 13 case, such as this case, the debtor retains control over property of the estate. *See id.* § 1306(b). Accordingly, a Chapter 13 trustee does not take possession or liquidate property of the estate, except with respect to money collected for the purpose of making distributions to creditors under a plan. *See id.* §§ 1302, 1303.

[65] *See id.* § 101(10)(A).

in possession, custody, or control, during the case, of property that the [debtor] may use, sell, or lease under section 363 . . . , or that the debtor may exempt under section 522 . . . shall deliver to the [debtor], and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.[66]

Denby-Peterson contends that we should join the majority of our sister circuits and conclude that: (1) Section 542(a)'s turnover provision is self-executing; (2) therefore, the creditors had a mandatory duty to return the Corvette to Denby-Peterson upon receiving notice of the bankruptcy filing; and (3) when the creditors rejected Denby-Peterson's demand for turnover, they violated the automatic stay.[67] We respectfully disagree with the majority. For the following reasons, we conclude that Denby-Peterson's threefold argument is unpersuasive.

## A.

First, in our view, Section 542(a)'s turnover provision is not self-executing; in other words, a creditor's obligation to

---

[66] *Id.* § 542(a). *See id.* § 1303 (providing the Chapter 13 debtor "the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(l)"); *id.* § 1306(b) (stating, in relevant part, that "the [Chapter 13] debtor shall remain in possession of all property of the estate").

[67] *See Fulton*, 926 F.3d 916; *Weber*, 719 F.3d 72; *Del Mission*, 98 F.3d 1147; *Knaus*, 889 F.2d 773.

turn over estate property to the debtor is not automatic.[68] Rather, the turnover provision requires the debtor to bring an adversary proceeding in Bankruptcy Court in order to give the Court the opportunity to determine whether the property is subject to turnover under Section 542(a).

Both the Federal Rules of Bankruptcy Procedure and the text of the turnover provision support our conclusion by demonstrating that the debtor's right to turnover is subject to substantive and procedural requirements that must be evaluated by the Bankruptcy Court.[69] It is only after the Bankruptcy Court determines whether those requirements are met that the debtor's right to turnover is triggered.

**i.**

We start with the procedure behind turnover. Denby-Peterson argues that a creditor's duty to turn over collateral is automatically triggered when a creditor receives notice of the bankruptcy petition. In other words, procedurally, says

---

[68] *But see Fulton*, 926 F.3d at 924 (reaffirming that Section 362(a)(3) "becomes effective immediately upon filing the petition and is not dependent on the debtor first bringing a turnover action"); *Weber*, 719 F.3d at 79 ("Section 542 requires that any entity in possession of property of the estate deliver it to the trustees, without condition or any further action: the provision is self-executing." (internal quotation marks omitted)).

[69] *See* 4 Norton Bankr. L. & Prac. 3d § 62:3 (2019) (stating that "several [Bankruptcy] Code provisions play a role in determining whether a turnover will be ordered pursuant to Code § 542(a)").

Denby-Peterson, all the debtor must do to initiate turnover is file a bankruptcy petition and notify the creditor of the filing. However, Federal Rule of Bankruptcy Procedure 7001(1) explicitly indicates otherwise. Under that Rule, the debtor must bring a request for turnover in an adversary proceeding before a Bankruptcy Court.[70] Accordingly, contrary to Denby-Peterson's claim, the debtor must not only file a bankruptcy petition, he or she must also initiate a turnover proceeding by (1) filing a complaint in Bankruptcy Court and (2) serving a creditor with a copy of the complaint.[71] This procedural requirement negates any possibility that a creditor's duty to turn over property is automatic.[72]

---

[70] *See* Fed. R. Bankr. P. 7001(1) (identifying, in relevant part, "a proceeding to recover money or property" as an adversary proceeding).

[71] "An adversary proceeding is essentially a self-contained trial—still within the original bankruptcy case—in which a panoply of additional procedures apply," *In re Mansaray-Ruffin*, 530 F.3d 230, 234 (3d Cir. 2008) (citing Fed. R. Bankr. P. 7001-7087), including the requirement that a complaint must be filed to commence such a proceeding, *see* Fed. R. Bankr. P. 7003 (stating that Federal Rule of Civil Procedure 3 "applies in adversary proceedings").

[72] Here, as noted by the Bankruptcy Court, Denby-Peterson did not initiate an adversary proceeding. Instead, she filed a motion for turnover entitled, in relevant part, "Motion for Return of Repossessed Auto." *Denby-Peterson*, 576 B.R. at 69.

Faced with this procedural posture, the Bankruptcy Court concluded that the parties waived their right to an

**ii.**

Moreover, the plain language of the Bankruptcy Code's turnover provision also shows that the provision is not self-effectuating. Section 542(a) provides that only property of the estate, as defined in Section 541, that is either (1) "property that the [debtor] may use, sell, or lease under section 363" or (2) property "that the debtor may exempt under section 522," is subject to turnover.[73] The turnover provision also explicitly limits the right to turnover to estate property that (1) is in the possession, custody or control of a creditor, and (2) is not "of inconsequential value or benefit to the estate."[74] Thus, on its face, the turnover provision includes numerous explicit conditions that must be satisfied before a property is subject to turnover.

In the case before us today, Denby-Peterson asks us to essentially ignore Section 542(a)'s statutory prerequisites and find that a creditor must immediately turn over any collateral

---

adversary proceeding. *See In re Village Mobile Homes, Inc.*, 947 F.2d 1282, 1283 (5th Cir. 1991) ("Compliance with the requisites of an adversary proceeding may be excused by waiver of the parties."). Treating the matter as a contested motion, the Court then addressed the merits of the turnover request. This difference in the procedural mechanism used to achieve turnover does not change our conclusion because, regardless of the form, a debtor must initiate a procedural event before the Bankruptcy Court in order for turnover to occur, if applicable, under the Bankruptcy Court's supervision.

[73] 11 U.S.C. § 542(a).

[74] *Id.*

that a debtor deems to be subject to turnover. We will not do so. We further note that mandating creditors to automatically turn over any property that the debtor deems worthy of turnover would allow debtors to temporarily strip creditors of their rights to assert affirmative defenses such as laches,[75] or to claim that the property is not property of the estate. While it is true that creditors would presumably be able to assert these defenses in Bankruptcy Court after turning over the collateral to the debtor, we do not read the turnover provision as placing the onus on creditors to surrender the collateral and then immediately file a motion in Bankruptcy Court asserting their rights.

In sum, in light of the plain language of Section 542(a)'s turnover provision, and the procedural and substantive requirements underlying turnover, it would be illogical for us to interpret the turnover provision as imposing an automatic duty on creditors to turn over collateral to the debtor upon learning of a bankruptcy petition. We therefore reject Denby-Peterson's claim that the turnover provision is self-effectuating.[76] Instead, we conclude that the turnover

---

[75] *See In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 337 (3d Cir. 2004); *see also In re Stancil*, 473 B.R. 478, 484 (Bankr. D.D.C. 2012) ("The plain language of section 542(a) demonstrates that establishing inconsequential value or benefit to the estate is an affirmative defense to a turnover action.").

[76] Denby-Peterson's reliance on the Supreme Court's decision in *United States v. Whiting Pools, Inc.* is misplaced. 462 U.S. 198, 201 (1983). Contrary to Denby-Peterson's claim that *Whiting Pools* implicitly supports the proposition that the turnover provision is self-effectuating, *Whiting Pools*

29

provision is effectuated by virtue of judicial action. The Chapter 13 debtor must first seek court intervention, such as through an adversary proceeding, and then the Bankruptcy

---

suggests the opposite: that the turnover provision is not self-effectuating because adequate protection can serve as a condition precedent before turnover. *See* 11 U.S.C. § 542(a) (providing that "property that the [debtor] may use, sell, or lease under section 363" may be subject to turnover); *id.* § 363(e) (stating, in relevant part, that "the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest"); *id.* § 361 (providing examples of "adequate protection").

In *Whiting Pools*, the Bankruptcy Court, not the Chapter 11 debtor, ordered the creditor to turn over property to the debtor. 462 U.S. at 201. Moreover, it did so only "on the condition that [the Chapter 11 corporate-debtor] provide the [creditor] with specified [adequate] protection for its interests." *Id. See id.* at n.7 ("Pursuant to [Section 363(e) of the Bankruptcy Code], the Bankruptcy Court set the following conditions to protect the tax lien: [the debtor] was to pay the [creditor] $20,000 before the turnover occurred; [the debtor] also was to pay $1,000 a month until the taxes were satisfied; the [creditor] was to retain its lien during this period; and if [the debtor] failed to make the payments, the stay was to be lifted."). *Whiting Pools* thus suggests that turnover is required upon (1) the debtor's filing of a motion for turnover, and (2) the issuance of a court order.

30

Court, not the debtor, must ultimately decide whether certain property must be turned over to the debtor.[77]

**B.**

Additionally, we point out that our interpretation of the turnover provision is not changed by the turnover provision's use of the phrase "shall deliver to the [debtor]."[78] As argued by Denby-Peterson, it may well be so that the word "shall" strongly suggests that turnover is mandatory.[79] However,

---

[77] We also note that under pre-Code practice, turnover was not viewed as self-effectuating. Before the Bankruptcy Code was enacted, a secured creditor, who had repossessed collateral pre-bankruptcy, retained possession pending the Bankruptcy Court's entry of a turnover order, *see* Ralph Brubaker, *Turnover, Adequate Protection, and the Automatic Stay (Part I): Origins and Evolution of the Turnover Power*, 33 Bankr. L. Letter No. 8, at 4-7 (Aug. 2013), and "[n]othing in the legislative history evinces a congressional intent to depart from that [pre-Code] practice." *Whiting Pools*, 462 U.S. at 208. *See In re VistaCare Grp., LLC*, 678 F.3d 218, 227-28 (3d Cir. 2012) (recognizing that "courts should be 'reluctant to accept arguments that would interpret the Code . . . to effect a major change in pre-Code practice,' absent at least some suggestion in the legislative history that such a change was intended" (quoting *Dewsnup v. Timm*, 502 U.S. 410, 419 (1992))).

[78] 11 U.S.C. § 542(a).

[79] *See Alabama v. Bozeman*, 533 U.S. 146, 153 (2001) ("The word 'shall' is ordinarily the language of command." (internal quotation marks omitted)); *Dessouki v. Att'y Gen. of United States*, 915 F.3d 964, 966 (3d Cir. 2019) (recognizing that

31

turnover is mandatory only in the context of an adversary proceeding presided over by the Bankruptcy Court. Under Rule 7001(1), the debtor must bring an adversary proceeding seeking turnover. True, the turnover provision states: "shall deliver," but the question before us is when must a creditor deliver? The answer is when the Bankruptcy Court says so in the context of an adversary proceeding brought under Rule 7001(1). We view the statutory and procedural framework as: (1) the Chapter 13 debtor must seek court relief, such as by initiating an adversary proceeding requesting turnover; (2) the Bankruptcy Court then determines whether the property is subject to turnover; and (3) if it is, in accordance with that determination, the Bankruptcy Court issues a court order compelling a creditor to turn over property to the debtor.

Our conclusion is further supported by the United States Supreme Court's reasoning in *Citizens Bank of Maryland v. Strumpf*.[80] In that case, the Court considered the interplay between the automatic stay[81] and the turnover provision in Section 542(b). Notably, notwithstanding the

---

"the word 'shall' imposes a mandatory requirement"); *see also* Shall, *Black's Law Dictionary* (11th ed. 2019) (defining "shall," in relevant part, as "[h]as a duty to; more broadly, is required to," and characterizing that usage as "the mandatory sense that drafters typically intend and that courts typically uphold").

[80] 516 U.S. 16 (1995).

[81] As relevant to *Strumpf*, the filing of a bankruptcy petition stays "the setoff of any debt owing to the debtor that arose before the commencement of the [bankruptcy] case . . . against any claim against the debtor." 11 U.S.C. § 362(a)(7).

word "shall" in that turnover provision, the *Strumpf* Court did not interpret the provision as self-executing.

Section 542(b)'s turnover provision states: "an entity that owes a debt that is property of the estate . . . *shall* pay such debt to . . . the trustee."[82] However, an entity is excused from that obligation "to the extent that such debt may be offset under section 553 . . . against a claim against the debtor."[83] Thus, similar to the turnover provision at issue in this case, the turnover provision in subsection (b) includes the word "shall" as well as a defense to turnover.

In *Strumpf*, the Supreme Court held that a bank's temporary withholding of funds in a debtor's bank account, pending resolution of the bank's setoff right,[84] did not violate the automatic stay. In reaching that holding, the Court reasoned, among other things, that interpreting Section 542(b)'s turnover provision as self-executing would "eviscerate" the provision's exceptions to the duty to pay.[85] Here, we likewise decline to interpret Section 542(a)'s "shall deliver" clause in a way that would disregard the provision's explicit defenses.[86]

---

[82] *Id.* § 542(b) (emphasis added).

[83] *Id.*

[84] *See Strumpf*, 516 U.S. at 19 ("Petitioner refused to pay its debt, not permanently and absolutely, but only while it sought relief under § 362(d) from the automatic stay.").

[85] *Id.* at 20.

[86] *See Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) ("[W]hen Congress uses the same language in two statutes having similar purposes . . . it is appropriate to presume that

## C.

Even assuming the turnover provision is self-executing, as pointed out by the Tenth Circuit, "there is still no textual link between [Section] 542 and [Section] 362."[87] The language of the automatic stay provision and the turnover provision do not refer to each other. The absence of an express textual link between the two provisions indicates that they should not be read together, so violation of the turnover provision would not warrant sanctions for violation of the automatic stay provision.

## VI.

Guided by the plain language of the Bankruptcy Code's automatic stay and turnover provisions, the legislative purpose and policy goals of the automatic stay, and the reasoning of the Supreme Court and our two sister circuits, we hold that a creditor in possession of collateral that was repossessed before a bankruptcy filing does not violate the automatic stay by retaining the collateral post-bankruptcy petition.

We will thus affirm the order of the District Court affirming the Bankruptcy Court's order denying Denby-Peterson's request for sanctions.

---

Congress intended that text to have the same meaning in both statutes.").

[87] *Cowen*, 849 F.3d at 950.